CLARA J. HARRISON, Appellant, *vs.* JOHN M. TIERNEY *et al.*
Appellees.

*Opinion filed April 18, 1912—Rehearing denied June 6, 1912.*

1. FRAUD—*equity may relieve against fraud though no fiduciary relation is involved.* A court of equity has power to grant relief against a transaction whereby one party gains another's farm, without parting with any consideration therefor, through fraud practiced by her husband and a real estate agent upon the owner of the farm, even though there is no technical fiduciary relation between such owner and the parties who practiced the fraud.

2. SAME—*when equity may follow the fund into other property and establish a lien.* If one party by means of fraud obtains another's farm without parting with any consideration therefor a court of equity may require her to convey the title if she has not parted with it, and if she has traded the farm for other property the court may follow the fund into such property and establish a lien thereon.

APPEAL from the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding.

DAVID B. MAXWELL, and KRUSE & PEDEN, for appellant.

DUNNE, McKEEVER & DUNNE, and C. H. ROBINSON, for appellees.

Mr. JUSTICE HAND delivered the opinion of the court:

The appellant, Clara J. Harrison, a widow fifty-seven years of age, on the 28th day of March, 1908, was the owner of a farm of 159 acres situated near the village of Flora, in Clay county, which she valued at $10,000 and which was encumbered by a mortgage for $2200, and was occupied by a tenant. The appellant on that date was residing in Chicago with her son, who was about twenty years of age and who was in school, and she was supporting herself and son by keeping a rooming and boarding house,

except in so far as she derived an income from said farm. One hundred acres of the farm were planted to an apple orchard, which did not produce well, and after keeping the improvements up on the farm, paying taxes, etc., her income from the farm was limited, and she determined to sell the farm. With that view she applied to McKey & Poague, who had a real estate and loan office at 451 Sixty-third street, Chicago, to make a sale of said farm. She was introduced by a member of the firm to the appellee James P. Caulfield, who was in their employ, and directed to confer with him in regard to the sale of her farm. She informed Caulfield that she had no property other than the farm, and had no income other than from the farm (which was limited) and what she made by keeping roomers and boarders, and stated to him that she desired to sell the farm and invest the proceeds in such manner as to secure to herself a permanent income upon which she might live. Caulfield advised her to exchange her farm for Chicago income-paying property, and stated to her that he had a flat-building in Englewood for sale or trade and that the owner might be willing to trade that property for her farm. A few evenings thereafter, Caulfield, in company with John M. Tierney, who was introduced to the appellant as the owner of the flat-building, called upon the appellant at her home in Chicago, where the proposition of trading the flat-building for her farm was fully canvassed. At that meeting the appellant and her son and Caulfield and Tierney were present. Tierney described to the appellant the flat-building owned by him, its location and nearness to transportation, and stated that it was renting for $3170 per year, that it would produce a net income of $1850 over and above all carrying expenses, and that his price therefor was $21,000. He proposed to trade for appellant's farm on the basis of $10,000 for the farm and $21,000 for the flat-building, the farm to remain subject to a mortgage for $2200 and the flat-building to remain subject to a mortgage for $2000, which he

stated was the amount of the encumbrance on the flat-building. The appellant, after they had had considerable talk with reference to the exchange of the properties, appears to have been favorably impressed with the proposition, but stated to Caulfield and Tierney that she wanted to convert her farm into property that would produce an income for her support and did not desire to speculate, and that by reason of her lack of business experience and the magnitude of the deal she thought she better take time and obtain legal advice before deciding what she would do with reference to an exchange of the properties. Thereupon Caulfield stated to the appellant that he had known Tierney for a number of years and that he was reliable and she could rely upon what he stated to her. Tierney at the same time stated to her that he was a gentleman and would treat her as such in the deal; that it was not necessary for her to consult a lawyer with reference to the exchange, as he understood the closing of such deals; that he had a lawyer in his employ upon whom they could rely to see everything was legal and right if he did not have time to attend to the transaction. No agreement for the exchange of the properties was consummated on that evening, but Caulfield and Tierney left the home of the appellant with the understanding that appellant was to visit the flat-building in company with Caulfield. This she did in a few days, and found a three-story brick building, consisting of a basement, two stores and four flats, located at 522 and 524 West Sixty-third street, which appears to have impressed her very favorably by its finish and proportions. Within a day or two thereafter Caulfield called upon her again with an unsigned proposition, which had been prepared by the attorney of Tierney, from the appellant to Sarah E. Tierney, the wife of John M. Tierney, in whom the legal title to the flat building rested, to trade to her appellant's farm for the consideration of $10,000, subject to a mortgage for $2200, for the "improvements on and lease of" the land known

as Nos. 522 and 524 West Sixty-third street, in the city of Chicago, for the consideration of $21,000, subject to a mortgage for $2000, and subject to a second mortgage for the sum of $11,000 from appellant to Sarah E. Tierney to secure the difference between $21,000, the price of the flat-building, and $10,000, the price of the farm. Said last mortgage fell due $1000 per year for nine years and $2000 the tenth year, and bore interest at six per cent per annum. The proposition provided that insurance, taxes, the difference between the encumbrances on the two properties, etc., should be adjusted on the day the exchange of properties was consummated, and which was on that day so adjusted that the appellant was brought into debt to Sarah E. Tierney in the sum of $282.83, after she had paid to the firm of McKey & Poague a commission of $250 for selling her farm. The proposition was read over to the appellant by Caulfield and the appellant signed it and delivered it to Caulfield, who presented it to Tierney, who accepted it in the name of Sarah E. Tierney, upon the condition that he should find the farm, upon examination, to be worth $10,-000. He thereafter went to Flora and looked at the farm and then accepted the proposition unconditionally. A few days thereafter Caulfield telephoned the appellant to come to the office of McKey & Poague. When she arrived she found Caulfield, Tierney and his attorney waiting to close the deal. She then stated she did not want to make the exchange, but the attorney said she had signed the written proposition for the exchange and would have to convey her farm, and Tierney said it was a good trade for her and urged her to close the deal. This she did by conveying her farm to John M. Tierney for Sarah E. Tierney, subject to a mortgage for $2200, and the improvements and lease-hold interest at 522 and 524 West Sixty-third street were conveyed to her by Sarah E. Tierney and John M. Tierney, subject to a mortgage for $2000, and she gave Sarah E. Tierney her notes for $11,000, which were secured by a

second mortgage upon said premises. On the next day Caulfield and Tierney sent for the appellant again and had her execute a power of attorney to appellee John G. Stone, authorizing him, as her agent, to take possession of said flat-building in her name and to lease the same and collect the rents, and out of the rents to pay all taxes, insurance and such sums as should be necessarily expended by him for repairs and the ground rent on the premises, and after retaining for his trouble a commission of three per cent on the amount collected, to pay the balance of the income received as rent from said flat-building upon the mortgages upon said premises until said mortgages were fully paid and satisfied, and thereupon Stone took possession of said premises as the agent of the appellant. In about ten days after the entire deal was closed Stone wrote the appellant the heating apparatus in said flat-building had failed and it would cost $115 to repair the heater and boiler, and asked for instructions. In about four months after the deal was closed he wrote the appellant, apparently at the suggestion of Tierney, that the taxes on said flat-building for 1907 had not been paid, and that the first note, secured by the $2000 mortgage on the said premises, was due, and informed her that Mr. Proudfoot, the holder of said mortgage, was insisting that said taxes and said note be promptly paid, and asked for instructions. The appellant, not having any money with which to make said payments, called upon Caulfield and asked what she should do. Caulfield agreed to see Tierney in regard to the matter, which apparently he did, and thereafter reported to the appellant that Tierney would let her have the money with which to pay the taxes and first note secured by the $2000 mortgage, and some other claims against the flat-property which were then due. Thereupon, under the direction of Caulfield and Tierney, the appellant re-conveyed the improvements and leasehold at 522 and 524 West Sixty-third street to Sarah E. Tierney, which conveyance was placed of record in the recorder's

office of Cook county, and Sarah E. Tierney and husband executed a re-conveyance of said property to appellant and deposited the same in escrow with Caulfield, with an agreement that if the appellant re-paid the amount so paid out for her benefit by the Tierneys, with six per cent interest thereon and $25 attorney's fees, within one year from that date, Caulfield was to deliver said deed to the appellant, and if said sum of money, which aggregated something like $2000, was not re-paid within one year, Caulfield should return said deed to the Tierneys. After the leasehold and flat-building had been re-conveyed to Sarah E. Tierney by the appellant, John M. Tierney traded the farm which had been conveyed to him by the appellant for property located in Buena Park, in the city of Chicago, known as Nos. 24 and 26 Alexander place. The appellant never received anything for her farm from John M. Tierney or Sarah E. Tierney, and after she discovered that instead of obtaining a net income upon which to live, of $1850 a year, as a result of the exchange of her farm for said flat-property she had lost her farm, through the advice of friends she employed counsel and commenced to investigate the transactions which she had had with Caulfield and Tierney, and found the facts to exist as they have been hereinbefore recited. She then filed this bill in the circuit court of Cook county, praying that James P. Caulfield be enjoined from re-delivering the deed which had been executed by Sarah E. Tierney and husband to the leasehold property and improvements at 522 and 524 West Sixty-third street, to Sarah E. Tierney, and that John M. Tierney and Sarah E. Tierney be required to account to her for the value of her farm, and that the amount found due her be made a lien upon the flat-property and the property at Buena Park, for which said farm had been exchanged, and for general relief. An answer and replication were filed by John M. and Sarah E. Tierney, and a replication was filed thereto. A hearing was had before the chancellor, and at the close of the complain-

ant's case the court, upon the motion of the defendants, dismissed her bill for want of equity, and she now appeals.

The appellees take the position, in support of the decree dismissing appellant's bill, that John M. Tierney represented his wife, Sarah E. Tierney, in the exchange of properties between Mrs. Tierney and the appellant, and that James P. Caulfield represented the appellant in the exchange; that Mrs. Tierney and the appellant were total strangers to each other, never having met, and dealt at arm's length with each other; that if the appellant lost her farm in the exchange and Sarah E. Tierney gained the farm in the transaction, the appellant is remediless and can obtain no relief in a court of equity. We are not impressed with the legality or justice of that view, but are of the opinion that if the story told by the appellant upon the witness stand, as hereinbefore set forth, is true,—and for the purposes of this appeal it must be taken as true as it is uncontradicted,— she was wrongfully and fraudulently deprived by Caulfield and John M. Tierney of her farm, and that Sarah E. Tierney obtained title to the said farm in the name of her husband by reason of such fraud and without paying to the appellant one cent therefor, and that this being true, the arm of a court of equity is not so weak that it can not right the wrong thus committed upon the appellant by Caulfield and John M. Tierney. At the outset of the transaction the appellant owned a farm which was alleged in the bill to be of the value of $10,000, upon which there was a mortgage of $2200. She therefore had an equity of $7800 in said farm. She asked Caulfield to find her a purchaser for her farm, with a view that she might invest the proceeds of the farm in such manner that she would derive therefrom an income for her support. Caulfield had the Tierney flat-building, which stood upon leased property, for sale or trade, and through the manipulation of Caulfield and John M. Tierney the flat-building was loaded onto appellant, who was relieved of her farm

by Caulfield and Tierney and the title thereto was placed in Tierney for the benefit of his wife. After the trade was consummated appellant held the title to a property which was represented to her as producing an annual rental of $3170, but which she soon ascertained would cost to carry, according to the showing made in this record by Tierney, the sum of $738 as ground rent, $844 as fixed charges and $780 interest on the two mortgages, making a total of $2465, to which must be added $2000 due upon the two mortgages the first year. These amounts aggregate the sum of $4465. Caulfield and Tierney knew the appellant had no money with which to pay these sums except the $3170, the amount of the rent of the flat-building. The transaction, at the end of the year, would leave the appellant $1295 worse off than nothing. The appellant was without business experience, and the evidence found in this record clearly shows she was talked into making an arrangement for disposing of her farm by Caulfield and Tierney which must necessarily lead to her bankruptcy within a short time. When she was unable to extricate herself from the situation into which she had fallen by reason of the advice of Caulfield and Tierney, she was again induced by them to re-deed the flat-building which she had received in exchange for her farm, to Sarah E. Tierney, with the understanding that if she would pay to Sarah E. Tierney about $2000 within one year, then the flat-building would be re-conveyed to her, otherwise she was to forfeit all the right she had in said flat-building.

While it may be that, as appears to have been the view of the trial court, in a technical sense no fiduciary relation existed between appellant and John M. Tierney and Sarah E. Tierney, such as exists between guardian and ward, parent and child, trustee and *cestui que trust,* still we do not think the want of that relation, under the uncontradicted evidence found in this record, is decisive of this case, as the evidence shows that the appellant fully disclosed to Caul-

field and Tierney her reason for desiring to dispose of her farm,—that is, to invest its proceeds in such manner as to furnish therefrom to her an income which would be sufficient for her support,—and that after they had fully acquainted themselves with her desires in the premises they took advantage of the situation by encouraging and advising her to a course of conduct which must necessarily lose her the farm, as they must have known, and invest John M. Tierney, for the benefit of Sarah E. Tierney, with the title thereto. Their course of conduct in this particular amounted, in law, to fraud, and a court of equity, when appealed to by the appellant, ought not, we think, to permit John M. Tierney and Sarah E. Tierney to profit by such fraud and be left in the enjoyment of the fruits of the misconduct of Caulfield and John M. Tierney. While the transaction may not be set aside on the ground of a confidential relation existing between the parties thereto, we think a decree may be entered against Sarah E. Tierney and the other appellees on the ground that Sarah E. Tierney obtained title to appellant's farm through her husband without giving to her any consideration therefor and through and by reason of the fraud which was practiced upon appellant by Caulfield and John M. Tierney. The evidence found in this record is ample to show that while the papers which were executed by appellant show that she only bought a leasehold interest in the property located at 522 and 524 West Sixty-third street, she supposed, from the inception of the negotiations for the exchange, that she was buying the fee in said property. There was introduced in evidence by appellant a statement in writing made up by Caulfield, in the presence of the appellant, from the oral statements made by John M. Tierney when the large net income from the flat-building which he was figuring out for the future use of the appellant was being made up, from which the item of ground rent, which amounted to $738 per year, was entirely omitted, and the appellant testified that in all the conversa-

tions which she had with Caulfield and Tierney with reference to the exchange of properties, nothing was said to her about a leasehold or that any amount as ground rent was to be paid upon said premises in the future. It may be they informed her she was only getting a leasehold interest, and that by reason of her lack of experience in dealing in real estate she did not know the difference between a fee and a leasehold interest; but if such was the fact, when they stated in writing the amount of the fixed charges against the flat-property, it is strange that they did not include the ground rent. True, the papers connected with the exchange describe the property as leasehold property. That provision, however, in the proposition made for the exchange of said properties by the appellant, is written in with pen and ink, and appellant testified that the proposition she signed was written wholly with the typewriter, except in so far as it was in print, and her statement in this regard was uncontradicted by Tierney, although he was present at the trial.

It must be borne in mind that the proceeds of the farm admittedly went into the Buena Park property. If the title to the farm were still in John M. or Sarah E. Tierney a court of equity could reach it without question, and we think it equally clear that a court of equity, the farm having been disposed of, has the power, as against John M. and Sarah E. Tierney, to follow its value into whatever form it may assume, so long as it remains in the hands of either John M. or Sarah E. Tierney.

The decree of the circuit court will be reversed and the cause remanded to that court, with directions to enter a decree in favor of the complainant, in accordance with the views herein expressed.

*Reversed and remanded, with directions.*