(No. 11239.—Reversed and remanded.)

THERESA DI ROSA, Appellee, *vs.* MARIA CONCETTA DI ROSA
SAMMARCO, Appellant.

*Opinion filed April 19, 1917.*

1. DEEDS—*there must be a substantial failure to perform agree-
ment to justify setting aside a deed in consideration of support.*
Where an agreement to support the grantor is the consideration
for a deed, the subsequent conduct of the grantee may warrant
the presumption that the deed was secured with a fraudulent in-
tent on the part of the grantee to not perform the conditions of
the contract; but to justify setting aside the agreement for such
fraud there must be a substantial failure or refusal to perform
the agreement.

2. SAME—*when decree setting aside deed should be vacated to
permit grantee to make her defense.* A decree setting aside a deed
at a hearing from which the defendant was absent without negli-
gence on her part should be set aside and the defendant be permit-
ted to make her defense, where the bill does not aver that the
defendant had failed or refused to keep her agreement to support
the grantor but only that she had persecuted and threatened to
eject the grantor and had violated her alleged agreement to remain
single, and where the affidavits of the defendant in support of the
motion to vacate present a good defense to the bill.

APPEAL from the Circuit Court of Cook county; the
Hon. THOMAS G. WINDES, Judge, presiding.

G. A. BURESH, (OTTO WADEWITZ, of counsel,) for
appellant.

A. G. DICUS, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the
court:

On November 22, 1915, the appellee, Theresa Di Rosa,
filed her bill of complaint in the circuit court of Cook
county against her daughter, the appellant, Maria Concetta
Di Rosa Sammarco, alleging that on July 26, 1907, the com-
plainant purchased with her own money a lot in Chicago
and on June 22, 1911, conveyed the same to the defendant

by a warranty deed expressing a consideration of $2000, but no money was paid; that at the same time the defendant entered into a written agreement with the complainant by which the complainant was granted a life estate in the premises with the privilege of collecting the rents, and the defendant agreed to remain and live single and unmarried until the death of the complainant, and to live with and take care of the complainant in her old age and to live with her in the same flat on the premises during her life; that during the month of August, 1915, the written agreement was surreptitiously taken by the defendant, who refused to give it back; that the defendant, in April, 1915, was married to Peter Sammarco, after which she undertook a system of persecution against the complainant and refused to let her collect rents from the premises; that the defendant and her husband lived with the complainant in the first or lower flat of the premises and the defendant was collecting $14 per month rent for the upper flat and giving the complainant $10 a month, which was not enough to care for and support her, and that the defendant had threatened to kick the complainant out of the property and deprive her of all income and benefit from the same. The bill prayed for a receiver of the upper flat during the pendency of the suit and an injunction against the defendant interfering with the complainant in the sole occupation of the lower flat, and that the deed should be set aside.

On December 9, 1915, the defendant filed her answer, admitting the execution of the warranty deed to her but denying that the complainant purchased the property with her own money and alleging that it was purchased with the money of the defendant; denying that any written or other agreement was made, as alleged in the bill, by which the complainant was granted a life estate with the privilege of collecting the rents, or that she made any agreement to live single and unmarried during the life of the complainant, or to live with her or take care of her or live in the same flat

with her during her lifetime; alleging that she had supported and maintained and taken care of the complainant and other members of the family for sixteen years and had given to the complainant during that time from $15 to $20 a week, and that the deed was made for the purpose of securing to her the property purchased with her own money; admitting that she had married Peter Sammarco, but denying that she undertook a system of persecution against the complainant or that the complainant had collected the rent or was entitled to do so; admitting that she and her husband were living with the complainant in the lower flat of the building and that she was giving the complainant $10 a month, but alleging that she was also providing her with board and clothing and all the necessaries of life, as she had done for the past sixteen years, and denying that she surreptitiously took any agreement and refused to give it back, or threatened to kick the complainant out of the property and deprive her of any income or benefit therefrom.

A receiver was appointed as prayed for in the bill, and the cause was heard by the chancellor on February 26, 1916, in the absence of the defendant and her solicitor. A decree was entered finding *seriatim* the facts alleged in the bill substantially in the language of the bill and setting aside the deed and enjoining the defendant from interfering with the complainant in the occupation of the premises, and for costs. A motion was made at the same term to vacate and set aside the decree, and notice of the motion was given. The motion was heard on March 20, 1916, and the chancellor found that neither the defendant nor her solicitor had been guilty of any negligence in failing to be present at the hearing of the cause, but that the matters and things set up as a defense to the bill were not sufficient, in law, to bar the relief prayed for, and the motion was denied and the defendant appealed.

No cross-errors have been assigned on the finding of the chancellor that neither the defendant nor her solicitor

was guilty of any negligence in failing to make the defense set up in the answer, and the affidavits clearly showed that fact. For the purposes of the motion the affidavits were to be taken as true, but it was the opinion of the chancellor that they did not show a meritorious defense, and therefore the default and decree ought not to be set aside and the defendant be permitted to prove the facts alleged, and that is the single question to be determined.

The affidavit of the defendant set forth that she was born on September 1, 1881, and lived with the complainant until after the filing of the bill, when she was advised to leave the home in order to avoid any friction while the case was pending; that when a girl she began working for the National Biscuit Company and worked there for about a year for $6 a week, and then worked for the McCormick Harvesting Company, where she was paid by the piece, for about ten years and earned from $10 to $18 per week, and afterward worked for the Western Electric Company in the same manner for several years, earning from $10 to $15 a week; that during all that time she paid to the complainant every dollar she earned; that her father, who was a section laborer earning $1.50 a day, died on August 18, 1898, leaving no estate whatever; that the expenses of his last illness and burial in a lot purchased by the defendant were paid by her; that $1000 was received from the railroad company for which he worked, which was paid to remove an incumbrance on premises on Leavitt street, which had been received in exchange for other property; that the Leavitt street property was sold for $2000, which was given by the complainant to the defendant as a part of her earnings which she had given to the complainant; that on the purchase of the property now in question the $2000 was paid by the defendant with an additional sum of $1300; that the complainant was incapable of performing any other than household work; that a brother who was a member of the family was an invalid, and defendant was the only

278 — 4

wage earner who contributed to the support of the family from the death of her father up to her marriage; that during the last years of his life her invalid brother was under the constant care of a physician, and the charges of the physician and the expenses of the burial were paid by her; that after the death of the brother the family consisted of the complainant and defendant; that the complainant repeatedly urged the defendant to marry because she was getting along in years, and it was at her pressing solicitation that the defendant was married; that her husband took up his home with the defendant and the entire household expenses of the family were thereafter borne by the husband of the defendant, and that out of the rent of the upper flat defendant paid complainant $10 a month for her personal use, no part of which was used for household expenses.

The affidavit of the conveyancer who prepared the deed and took the acknowledgment stated that the complainant and the defendant came to his office and the complainant informed him that she wished to have him prepare a deed conveying the premises in which they were living to the defendant and gave him a deed for the purpose of obtaining a description of the property; that the complainant gave as a reason for the conveyance that the defendant was the only child who had taken care of her and paid her the wages which she earned and which paid, in part, for the premises, and she did not wish to wait until her death to give the premises to the defendant; that about two years before that time he had prepared the last will and testament of the complainant, at her request, in his office, by which the premises were devised to the defendant; that he drew the deed as requested and sent for a witness in the adjoining office to witness its execution; that he explained in Italian to the complainant the nature of the deed, and she expressed her approval, affixed her mark thereto, acknowledged the deed and delivered it to him with directions to record it, which he did; that he heard everything that was

said between the parties, and that no other paper of any kind or character was talked of, drawn or signed, and nothing was said by either of the parties with reference to the defendant living with the complainant.

The witness who was called in was engaged in the real estate business and owned the building where the conveyancer's office was situated, and he made an affidavit that he was present, at the request of the conveyancer, to witness the signature to the deed and remained in the office until the complainant had gone; that the contents of the deed and effect thereof were explained to the complainant by the conveyancer in Italian, and that no other paper of any kind or character was drawn or discussed by the parties at the time or signed by either party, and nothing was said by the complainant with reference to the defendant living and remaining single and unmarried or the retention of a life estate in the premises with the privilege of collecting rents, nor was anything said with reference to any other agreement whatever.

The facts alleged in the bill as grounds for setting aside the deed were, that the defendant entered into a written agreement with the complainant by which the complainant was granted a life estate in the premises with the privilege of collecting the rents, and the defendant agreed to remain single and unmarried until the death of the complainant and to live with and take care of her in the same flat in her old age and be a companion to her during her life; that the defendant had violated the agreement to remain single, and after her marriage had begun a system of persecution of the complainant and refused to let her collect the rents and gave her only $10 a month from the rent. That allegation of the bill was not only contradicted by the affidavit of the defendant but also by the conveyancer who drafted the deed and the witness in whose presence it was explained in Italian to the complainant and executed by her. The complainant had executed a previous will by which the

property was devised to the defendant, and the reason given by the complainant for the deed was that the defendant was the only child who had taken care of her and paid her the wages she earned, which had paid, in part, for the premises, and the complainant did not wish to wait until her death to give the premises to the defendant but wished to do so then. These affidavits showed a complete and meritorious defense to the bill if the facts alleged in the bill had been otherwise sufficient to require the relief prayed for.

If it should appear on the hearing that there was an agreement for the support of the complainant which furnished the consideration for the deed, although it was not expressly averred in the bill that the agreement was such consideration, the law is that the subsequent conduct of a grantee in such a case must warrant the presumption that the deed was secured with a fraudulent intent on the part of the grantee of not performing the conditions of the contract. There must be a substantial failure or refusal to perform the agreement to justify setting aside a conveyance as having been fraudulently entered into in the first instance. (*Pittenger* v. *Pittenger,* 208 Ill. 582; *Meyer* v. *Meyer,* 247 id. 535; *Chamberlin* v. *Sanders,* 268 id. 41.) According to the bill the parties were living together in the lower flat and the defendant was paying the complainant $10 a month out of the $14 received for rent, and the only allegation was that it was a meager sum, which, under the circumstances of the parties, would not justify a conclusion that the sum was insufficient for personal expenses of the complainant if the defendant had not repudiated the contract and was furnishing the complainant with a home and providing her with necessaries. There was no averment of the bill that the defendant had ceased to support the complainant, and if at some uncertain time not stated in the bill there had been a threat to kick the complainant out of the premises it had not been executed. The averment of the bill that the defendant after her marriage, about four years

after the deed was made, had undertaken a system of persecution, and the like finding in the decree, was a mere conclusion and not the allegation or finding of any fact.

The order of the circuit court denying the motion to set aside the decree is reversed and the cause is remanded, with directions to set aside the decree and permit the defendant to make her defense to the bill.

*Reversed and remanded, with directions.*

---

(No. 11164.—Reversed and remanded.)
THE PEOPLE *ex rel.* Henry Stuckart, County Collector, Appellee, *vs.* PAUL J. DAEMICKE, Appellant.

*Opinion filed April 19, 1917.*