(No. 26465.—

STANLEY MRUK, Appellant, *vs.* MIKE MRUK *et al.*
Appellees.

*Opinion filed March 16, 1942—Rehearing denied May 12, 1942.*

CHARLES E. LOY, for appellant.

JOSEPH LUSTFIELD, (ODE L. RANKIN, of counsel,) for appellees.

Mr. CHIEF JUSTICE MURPHY delivered the opinion of the court:

The decree entered by the circuit court of Cook county in this case was reversed by the Appellate Court and the cause was remanded with directions to dismiss the complaint for want of equity. (311 Ill. App. 251.) This court granted leave to appeal.

In the summer of 1935 and for a long time prior thereto, plaintiff owned a two-apartment building located in Cicero. Except for some tax liens it was clear of encumbrances. Plaintiff's daughter and her husband occupied the lower apartment and plaintiff made his home with them. Defendants and their children occupied the upper apartment, for which they were to pay a rental of thirty dollars per month. In the latter part of August, 1935, plaintiff had some trouble with his daughter and her husband, which resulted in plaintiff's leaving the apartment and moving into the basement. He had lived in the basement but a few days when defendant, Mike Mruk, who was plaintiff's son, invited him to move into the apartment where the son and his family resided. Plaintiff was told he would be furnished a room and that he might share the food and com-

forts of the home with them. He accepted the invitation and moved in with defendants. Immediately thereafter plaintiff and his son discussed plaintiff's transfer of the premises to defendants on consideration that defendants were to furnish him a home, clothe, feed and care for him during his life and at death pay his funeral expenses.

On the seventh day of September, 1935, plaintiff executed a deed conveying the property to defendants as joint tenants. The deed was prepared by an attorney in the presence of plaintiff and his son. There is no material conflict in the evidence as to the circumstances surrounding the making and execution of the deed or the consideration for the transfer. Defendants' answer denied the allegation in plaintiff's complaint, that the deed was given without any consideration other than $1 but the record shows it is conceded that the consideration for the transfer was the home, care, food and clothing defendants were to furnish plaintiff during his life. There is a sharp conflict in the evidence as to who first suggested and promoted the transfer of the title. Plaintiff claims that his son Mike proposed it and followed such proposal with frequent requests that it be consummated. Mike testified that his father first suggested it and followed the suggestion with so many requests that it became annoying to him and as a relief from being "pestered about it" he agreed to accept the deed and furnish his father the home and the necessaries of life.

On the twenty-seventh of June, 1936, defendants deeded the Cicero property to third parties in exchange for a property located on Wenonah avenue in Berwyn. This they exchanged for residence property in Riverside and the one in Riverside was sold and defendants took $3100 of the proceeds of this sale and invested it in the property defendants owned when this suit was filed in August, 1938. It was purchased subject to a mortgage of approximately $3300. Whenever defendants acquired a new property they moved into it and plaintiff went with them.

It does not appear that plaintiff and defendants had any serious trouble from the date the deed was made until July 23, 1938. Plaintiff claims that during that period of time he was not furnished sufficient food or clothing and that the money defendants gave him was limited to small church contributions. On the latter date, plaintiff and defendants engaged in an altercation in which plaintiff received head injuries severe enough to require medical care. At the same time plaintiff bit one of Mike's fingers lacerating it to such an extent as to require stitches. Mike summoned the police and filed a complaint charging his father with disorderly conduct. He was arrested and held in the city jail one night but on the trial was acquitted. Plaintiff testified that on the evening of July 23, he was sitting on the porch, that the defendants and their children entered the apartment and when they started to close the door he made protest, that Mike then called him a robber and forcibly ejected him from the building. His testimony shows that both defendants struck him. Defendants' evidence tends to show plaintiff called Mrs. Mruk vile names and that Mike, in an attempt to stop him, ejected him from the apartment and ordered him to stay away until he became sober. One witness, who was plaintiff's cell-mate the night of his incarceration, testified that he heard Mike tell the police sergeant he did not want his father to come to his house again. After the trial plaintiff returned to defendants' home and lived with them a few days and then went to live with another son who resided in the same city. This suit was filed a few days thereafter.

No question is raised on the pleadings and with the exception of a reference to the prayer of the complaint, no part of them need be set forth. The prayer was that the deed which plaintiff gave defendants be declared to have been made to them as trustees under a constructive trust and that the trust property be traced by the court through the several transfers to the Berwyn property now owned

by the defendants, and that it be declared to be held in trust for the use and benefit of the plaintiff. The prayer contained a request for an accounting to determine the value of the property which plaintiff conveyed to defendants and that which defendants now own and that plaintiff be given a money decree for such difference in value. It also included a request for injunctive relief and for general relief.

On a reference the master found that plaintiff had not been properly cared for by defendants while he resided with them and that the altercation of July 23 was at the fault of the defendants and the treatment plaintiff received from the defendants was such as to force him from the home. There was a finding that plaintiff was at the time of the making of the deed approximately sixty-five years of age, that he was born in Poland and could not read, write or speak the English language. It was found that at the time of the conveyance in 1935 plaintiff's income consisted of the rental from the two apartments, about sixty dollars per month and that now he is penniless, except for an old-age-assistance allowance. The master recommended a decree in accordance with the prayer of the complaint. On the thirtieth day of September, 1939, a decree was entered which overruled exceptions and confirmed the report. It ordered a rereference to the master for the purpose of taking evidence on the accounting issue. On the rereference more evidence was taken and on May 23, 1940, a second decree was entered which found the value of the Cicero property which plaintiff conveyed to defendants to be $7500; that defendants, by reason of the payment of taxes and repairs, were entitled to a credit of $1373.43, thus leaving a balance of $6126.57. It was ordered that plaintiff have a judgment against defendants for such an amount and that if defendants did not pay the judgment within thirty days the property located on Clinton avenue, Berwyn, which the defendants now own,

be sold without right of redemption, and the master issue a deed forthwith to the purchaser giving him the right to immediate possession. It was ordered that out of the proceeds of the sale the costs should be paid and the balance be applied to the satisfaction of the judgment.

Where a parent has conveyed his real estate to a child on the child's promise that he will support the parent in old age or furnish him a comfortable home for life, and after the child has received the property he repudiates or fails to keep the promise, a court of equity will aid the parent by setting aside the conveyance to the child and restoring the property to the parent. (*Cooper* v. *Gum*, 152 Ill. 471; *McClelland* v. *McClelland*, 176 id. 83; *De Costa* v. *Bischer*, 287 id. 598; *Fabrice* v. *Von der Brelie*, 190 id. 460; *Cumby* v. *Cumby*, 240 id. 235; *O'Ferrall* v. *O'Ferrall*, 276 id. 132.) A deed executed by a parent under such circumstances belongs to a class distinguished by the courts from ordinary deeds of bargain and sale, in that the parent gives up his property for the consideration of future comfort and support, which, in the event of failure, a court of equity can not compel the child to furnish and a court of law can not compensate with damages. If the evidence is such as to justify a conclusion that an agreement of that kind was entered into with a fraudulent intent or has been abandoned or repudiated, a court of equity will set aside the conveyence. (*Di Rosa* v. *Sammarco*, 278 Ill. 46; *Weaver* v. *Zimmer*, 337 id. 498; *Domeracki* v. *Janikowski*, 255 id. 575.) Where there is a failure by the child to perform his part of such a contract, a court of equity may infer a fraudulent intent in the first instance or a determination to abandon the contract, and in either case will declare a rescission of the contract and a restoration of the property to the parent in order to prevent the manifest wrong. (*Berry* v. *Heiser*, 271 Ill. 264; *Stebbins* v. *Petty*, 209 id. 291; *Didiuk* v. *Karpuk*, 348 id. 98.) The failure to perform on the part of the child must be sub-

stantial, and in relation to material matters, such as would render the performance of the rest a thing different from what was contracted, (*Pittenger* v. *Pittenger,* 208 Ill. 582; *Russell* v. *Robbins,* 247 id. 510; *Haslinger* v. *Gabel,* 344 id. 354,) and the contract will not be rescinded on the mere whim or desire of the parent. *Wood* v. *Leeka,* 262 Ill. 607; *Detienne* v. *Detienne,* 291 id. 439.

The agreement to support and maintain, however, contemplates more than mere physical necessaries. Where an aged father is induced to convey all of his real estate to his son, in consideration of a promise by the son to support and maintain him, especially where the parties are to reside together, the agreement includes kindness, personal care and attention, as well as the furnishing of food and of shelter. Obviously the son can make his aged parent's life so unpleasant and miserable by cruel, unkind and brutal treatment as to make further living together intolerable. The breach by the child as to matters of kindness and personal care may be so substantial and material as to render the performance of his agreement a thing substantially different from that contemplated, and rescission is then a proper remedy. *Hensan* v. *Cooksey,* 237 Ill. 620; *Lockwood* v. *Lockwood,* 124 Mich. 627, 83 N. W. 613; *Johnson* v. *Paulson,* 103 Minn. 158, 114 N. W. 739; *Patterson* v. *Patterson,* 81 Iowa, 626, 47 N. W. 768.

The breach in such matters must be substantial and material. It is apparent that when an aged father strips himself of his property in favor of a son, who promises to support and maintain the father in his home, many disputes and disagreements can arise either because of the foibles and whims of old age or from mutual misunderstandings, and it is not for every dissatisfaction or discord that relief will be granted. When, however, after making such an agreement, the son treats his father in an unkind, cruel and brutal manner, inconsistent with the natural bond of affection that should exist between father and son, so as to

render further living together intolerable, a court of equity will rescind the contract and restore the property to the aged parent.

As has been noted, the evidence of the plaintiff and the testimony of the defendants is conflicting. The master in chancery saw the witnesses and heard them testify. He found that the defendants failed and refused to fulfill their agreement in that they ejected the plaintiff from their home; that the relations between the plaintiff and the defendants were strained; that on July 23, 1938, the defendants severely beat and bruised the plaintiff, locked him out of their home and had him arrested; that because of the altercation and of the hostile relationship existing between the parties, it would be unbearable and intolerable for the plaintiff to continue to reside with the defendants. It is the master's province in the first instance to determine the facts. While his finding of facts does not carry the same weight as the verdict of a jury, nor of a chancellor where the witnesses have testified before him, yet the master's findings are entitled to due weight on review of the cause. (*Keuper* v. *Mette,* 239 Ill. 586.) His conclusions as to the facts in this case have been approved by the chancellor. In that situation we are not justified in disturbing the findings unless they are manifestly against the weight of the evidence. *Pasedach* v. *Auw,* 364 Ill. 491; *North Side Sash and Door Co.* v. *Hecht,* 295 id. 515; *Klekamp* v. *Klekamp,* 275 id. 98.

The determination by the chancellor that the defendants failed to support and maintain the plaintiff according to their agreement, and that they ejected him from their home and treated him in an unkind and cruel manner, is well supported by the evidence, and we will not interfere with that conclusion. The offer made at the trial by the defendant Mike Mruk to take the plaintiff back and to fulfill his agreement came too late. *Fabrice* v. *Von der Brelie, supra.*

The decree of May 23, 1940, gave plaintiff a money judgment for $6126.57. This represents the value of plaintiff's premises which he conveyed to defendants, less credits allowed defendants for the payment of taxes and the making of certain repairs. The judgment was decreed to be a lien upon the premises owned by defendants at the time this suit was instituted and directed a sale without any right of redemption. If defendants had not conveyed the Cicero property, a proper decree would have declared defendants' obligation to support plaintiff terminated and would have revested the title to the real estate in plaintiff, making due allowance for credits equitably due to defendants for the payment of taxes which were a lien on the premises at the time of the conveyance. Since defendants had disposed of the Cicero property, a court of equity will adopt the principle of tracing and will follow that which represents the original property into any other property that may be definitely identified in the defendants' hands. (*Harrison* v. *Tierney*, 254 Ill. 271.) The sum of $3100 derived from the Cicero property was traced to the property owned by the defendants. The defendants' title to this property was subject to a mortgage indebtedness. The decree should terminate defendants' obligation to support plaintiff and vest the title of the premises now owned by defendants in plaintiff subject to the mortgage lien. There should be an accounting to determine the amount of plaintiff's loss, after allowing defendants credit for the value of the property now owned by them and the taxes they paid on the Cicero property which were a lien when they received the deed from plaintiff, and a money judgment should be entered in favor of plaintiff for such amount.

For the reasons assigned, the judgment of the Appellate Court and both decrees entered by the circuit court are reversed and the cause is remanded, with directions to proceed in accordance with the views expressed.

*Reversed and remanded.*