Herbert, J.
Admittedly, these eases present an unhappy situation which, unfortunately, no reviewing court decision can cure but which only time alone can alleviate.
Although a separate entry was made in each case in the Court of Appeals, both cases were considered in their entirety in the single opinion rendered. The error into which that court fell is apparent in the opening statement of the opinion, which is as follows:
“The ultimate question which is before this court at this time is who is entitled to the custody of a little five-year old girl named Catherine Arlene Biddle, herein called Cathy. This is *212 so because there are pending before this court two separate appeals on questions of law, both having to do with the custody of Cathy.”
The above statement is partially correct, as the custody of Cathy does depend upon the decisions, but her custody is not the ultimate question. Much more is involved.
It appears from the records here that the battles for custody in the divorce court were exclusively between the former husband and wife, the Iioehns not having been before that court. It does appear, however, that an effort by them to be joined as parties was denied. Regrettable though it may be that the relations between Dora Jean and her parents had become so strained, nevertheless, there can be no question about the legal propriety of the habeas corpus action as the divorce court at that time had full and continuing jurisdiction over the custody of Cathy.
Custody in a divorce action is controlled by Section 3105.21, Revised Code, which authorizes the court to make such order for the disposition, care and maintenance of the child as is just and in accordance with Section 3109.04, Revised Code. Section 3109.03 recognizes the right of a parent to custody and provides that both parents shall stand upon an equality so far as such parenthood is involved. Section 3109.04, however, grants the divorce court very broad power. It provides:
“Upon hearing the testimony of either or both parents, corroborated by other proof, the court shall decide which of them shall have the care, custody, and control of the offspring, taking into account that which would be for their best interest, except that if any child is 14 years of age or more, it may be allowed to choose which parent it prefers to live with, unless the court finds that the parent so selected is unfitted to take charge. The provisions pei-mitting a child to choose the parent with whom it desires to live shall apply also to proceedings for modification of former orders of the court fixing custody. If the court finds, with respect to any child under 18 years of age, that neither parent is a suitable person to have custody.it may commit .the child to a relative of the child or certify a copy of its findings, together with so much of the record and such further information, in narrative form or otherwise, as it deems neces *213 sary or as the Juvenile Court requests, to the Juvenile Court for further proceedings, and thereupon the Juvenile Court shall have exclusive jurisdiction. This section applies to actions pending on August 28, 1951.”
It is apparent under the provisions of the above-quoted section that it would have been possible for the divorce court to have placed the custody of Cathy in her grandparents as well as the father or mother had the issue been presented to it. It might even have certified its findings to the Juvenile Court and thereby relinquished its continuing jurisdiction. Not having the record in the divorce and custody proceeding before us, we have no knowledge as to the situation presented to that court. On the records in the instant cases we must resolve the conflict between the habeas corpus and the adoption proceedings.
The Court of Appeals, in its opinion, reviewed at considerable length the difficulties between the grandparents of the child and her mother and the contemporaneous nature of the two proceedings. It then stated:
“In our opinion, the jurisdiction of the divorce court over the child was continuous and had the effect of depriving the Probate Court of the power to exercise its jurisdiction. As a result, the final decree of adoption made by the Probate Court was not merely erroneous but null and void.”
Apparently, the appellate court based its conclusion upon a long line of decisions of this court, commencing with the case of Hoffman v. Hoffman, 15 Ohio St., 127, holding that a divorce court has continuing jurisdiction of a minor child over which it has acquired jurisdiction in a divorce action, and upon a further group of decisions such as that in Addams, Judge, v. State, ex rel. Hubbell, 104 Ohio St., 475, 135 N. E., 667. In that case it was held, in effect, that a Probate Court lacks jurisdiction to enter a guardianship order with respect to a minor child whose custody is within the jurisdiction of a divorce court. Undoubtedly those cases express the law of this state as to the continuing jurisdiction of the Common Pleas Court over the custody of a minor child in a divorce action, so long as the parental relationship of the natural parents continues. None of those cases, however, are applicable to the situation here where adoption is sought.
*214 Whereas custody in a divorce action relates only to the possession, care and control of a minor child by a parent or some other person designated by the court in the divorce proceeding without regard even to financial support, adoption, on the other hand, embraces not only custody and support but also descent and inheritance and in fact every legal right with respect to the child. Adoption is purely a creature of statute and jurisdiction over adoption proceedings is vested by Section 3107.02, Revised Code, exclusively in the Probate Court. See 1 Ohio Jurisprudence (2d), 629, Section 3.
Section 3107.13, Revised Code, provides in part:
“Except in the case of a natural parent married to the adopting parent, the natural parents, if living, shall be divested of all legal rights and obligations due from them to the child or from the child to them, and the child shall be free from all legal obligations of obedience or otherwise to such parents. The adopting parents of the child shall be invested with every legal right in respect to obedience and maintenance on the part of the child, and the child shall be invested with every legal right, privilege, obligation, and relation in respect to education and maintenance as if such child had been born to them in lawful wedlock. For all purposes under the laws of this state, including without limitation all laws and wills governing inheritance of and succession to real or personal property and the taxation of such inheritance and succession, a legally adopted child shall have the same status and rights, and shall bear the same legal relationship to the adopting parents as if born to them in lawful wedlock and not born to the natural parents * *
A final adoption order results in a legal sense, therefore, in terminating the child and parent relationship between the child and its natural parents and creating an entirely new child and parent relationship between the child and its adoptive parents. Section 3705.18, Revised Code, even provides that a new birth certificate be issued for the child.
If we accept the reasoning of the Court of Appeals in these cases, we are confronted with the anomalous situation of a divorce court having continuing jurisdiction over the custody of a minor child in a divorce action but having no jurisdiction to hear and determine an adoption proceeding involving the same *215 child and a Probate Court having exclusive jurisdiction over adoption proceedings but being unable to exercise it with reference to such child because of the continuing jurisdiction of the divorce court. This would make it impossible for a minor child of divorced parents to be legally adopted. Further examination of the sections relating to adoption discloses that this was not the intent of the General Assembly.
Section 3107.09, Revised Code, after providing for full hearing by the Probate Court on the petition for adoption and the issuance of an interlocutory order or final decree, then provides :
“The granting of an interlocutory order, or a final decree shall terminate the jurisdiction of a divorce court over the child. A certified copy of the order or decree shall be mailed or delivered to the court having jurisdiction of the divorce proceeding.”
Note, also, that Section 3107.06 (D) provides:
“No final decree or interlocutory order of adoption shall be entered with respect to any child in the custody of the Juvenile Court or concerning whose custody or disposition proceedings are pending in such court, until such custody or proceedings have been suspended or terminated by such court.”
Construing the above provisions together, we can only conclude that the General Assembly, although it denied authority to enter a final decree or interlocutory order of adoption with respect to any child involved in a Juvenile Court proceeding until the suspension or termination of such proceeding, in no way limited the jurisdiction of the Probate Court to consider and finally determine all other adoption proceedings. To conclude otherwise would be to nullify the above-quoted portion of Section 3107.09, Revised Code.
We hold, therefore, that a Probate Court has. jurisdiction to hear and determine an adoption proceeding relating to a minor child notwithstanding the fact that the custody of such child is at the time within the continuing jurisdiction of a divorce court.
Next we must examine the proceeding in the Probate Court to see whether jurisdiction properly attached in this case..
The grandparents, presenting the written consent of the *216 father, brought their action under the provisions of subdivision (B) (4) of Section 3107.06, which states:
“If it is alleged in the petition that one or both of the parents have willfully failed to properly support and maintain the child for a period of more than two years immediately preceding the filing of the petition, the court shall cause notice of the filing of said petition and the allegations of such failure to be given such parents as provided in Sections 2101.26 to 2101.28, inclusive, of the Revised Code. After such notice has been given, the court shall determine the issue as to such failure to properly support and maintain the child. The consent of a parent found by the court to have willfully failed to properly support and maintain the child for such period shall not be required.”
Admittedly, the procedural steps were properly followed. The issue as to the allegation of willful failure to properly support and maintain the child then became one for the court to determine. The Probate Court determined this question of fact in favor of the grandparents and adversely to Dora J ean. The Court of Appeals, although it disposed of the case in its journal entry solely on its finding that the Probate Court did not have jurisdiction to entertain the petition for adoption, nevertheless indicated in its opinion that this determination was against the weight of the evidence.
It also found that the Probate Court did not have jurisdiction to dispense with the interlocutory order and enter a final decree of adoption, so that further discussion of these issues is necessitated here.
The only evidence adduced by the appellee, Dora Jean, was her own uncorroborated testimony, while the testimony of the appellant grandparents was corroborated by other witnesses and in part by the appellee herself. From the time of the birth of Cathy until the time of the hearings in these cases, some four years, the child resided in the home of and was cared for by her grandparents. In fact, it has been the only home she has known. Giving the unsupported testimony of the appellee the most favorable consideration, it appears clear that during the entire period appellee by her own admission contributed no money to the care of such child and at most purchased a few clothes and toys and perhaps paid a few medical bills. During a part of *217 this period she was gainfully employed and during all the period she was receiving the support payments from her divorced husband which he had been ordered to pay for the support of his child. The appellee used none or at best very little of these payments for that purpose. The record further shows that even though she occupied the same house as the child she disregarded the child most of the time, gave her very little personal care and attention and showed no interest in her, leaving the complete daily care of the child to the grandparents.
The phrase, “properly support and maintain,” certainly implies more than mere financial support although here there is practically no evidence of even that. It implies also personal care and attention by the parent having custody.
In Mruk v. Mruk (1942), 379 Ill., 394, 41 N. E. (2d), 490, a 65-year-old native of Poland resident in Cicero had deeded certain property to his adult son in consideration of the son’s promise to support and maintain him for the remainder of his life. In the opinion, the court stated (page 400):
“The agreement to support and maintain, however, contemplates more than mere physical necessaries. Where an aged father is induced to convey all of his real estate to his son, in consideration of a promise by the son to support and maintain him, especially where the parties are to reside together, the agreement includes kindness, personal care and attention, as well as the furnishing of food and of shelter.”
If this principle is applicable to the obligation of an adult son to support and maintain a parent, how much more applicable it is with reference to the mother of an infant daughter.
Whether she “willfully failed” was also a question to be determined. When a parent, knowing of his duty to support and being able to provide such support, voluntarily and intentionally fails to do so, such parent may be found to have “willfully failed” within the meaning of the statute. We think the finding of the Probate Court in this respect is amply supported by the evidence.
Coming to the final question to be resolved, the Court of Appeals also held in its opinion that the order entering a final decree was invalid as not being in compliance with the following provision of Section 3107.09, Revised Code:
*218 “The court may after hearing dispense with the interlocutory order and enter a final decree of adoption if one of the following conditions exists: 44 * * *
“(C) The child was legally placed in the home of the petitioner, the placement has been found by the proper court to be beneficial to thé child, and such child has resided therein continuously for a period of six months.”
The opinion states:
“Cathy was never ‘legally placed’ in the home of the Hoehns. In the divorce court, the custody, care and control of Cathy was awarded to her mother. The fact that Cathy and her mother were guests in the home of her grandparents does not imply that she was ‘legally placed’ in their home. The ‘proper court’ referred to in the above statute obviously is the court which ‘legally placed’ the child. It was not the Probate Court. Hence for these two serious defects there was no authority to waive the probationary period and enter a final decree as. was done here, and such order is therefore invalid.”
1 There is no question that the child resided in the grandparents’ home with the full approval of her mother from the time of her birth until the exodus of the mother just prior to her marriage to Klein.
As to the phrase, “legally placed in the home of the petitioner,” we cannot accept the conclusion of the Court of Appeals that this requires placement by a court, which led to the further conclusion that the “proper court” can only mean the court which “legally placed” the child.
Although custody was granted to the mother, no order of the divorce court here “legally placed” Cathy in any specific home.
In the case of In re Tilton, 161 Ohio St., 571, 120 N. E. (2d), 445, the facts were comparable to the facts in the instant case with the exceptions that there the mother was unwed, the relatives were her brother and sister-in-law instead of her father and mother, and abandonment was also involved.
In the opinion, in which all but one member of the court concurred, it is stated:
“It is the judgment of this court that the child in question *219 immediately after its birth was lawfully placed in the home of the respondents and that the respondents legally came into possession of the child under the provisions of Section 1352-13, General Code * * * [Section 5103.16, Revised Code, relating to the placing of a child under two years of age].”
The concluding paragraph of the opinion states:
“We have no difficulty in determining that the trial court’s finding of facts is amply supported by substantial evidence. The Court of Appeals, therefore, had no power to reverse the judgment and render final judgment contrary to that of the trial court. The most the Court of Appeals could have done was to reverse on the weight of the evidence and remand to the trial court. ’ ’
It is perhaps rarely that a child sought to be adopted is not in an institution or under the jurisdiction of the Juvenile Court, but it does not follow that a child cannot be “legally placed” in a home except by a court order. The second conclusion, that the “proper court” must be the court which “legally placed” the child, must accordingly fall, otherwise the Legislature could well have used the phrase, “by the court so placing the child,” instead of the phrase, “by the proper court.”
Here the question of adoption was the prime and ultimate question before the Probate Court. The provision of Section 3107.09 (C), Revised Code, is called into operation only with respect to that court’s power to dispense with an interlocutory order and enter a final decree. That provision is not even invoked where an interlocutory order is issued. Looking at the provision in that light, the question of legal placement in a home was never before any court previously. Therefore, the Probate Court was the first court which could determine whether the placement was beneficial to the child. In our opinion, the child in the instant cases was legally placed in her grandparents’ home within the meaning of Section 3107.09 (C), Revised Code, when she was brought there voluntarily by the mother immediately after birth and so maintained there after she was subsequently awarded legal custody. Accordingly, we can come to no other conclusion than that the Probate Court was a “proper court” to determine whether the placement was “beneficial to the child.”
*220 In the light of these conclusions, the Probate Court was fully authorized on its findings to dispense with an interlocutory order and enter a final decree of adoption.
Also, in the view of the writer, that court, which had an opportunity to see and hear the witnesses, fairly weighed the evidence and correctly applied the law to that evidence. If there was a valid adoption decree then that decree terminated appellee’s right to custody. However, this court adheres to its well established practice that we do not weigh the evidence, so it follows that, as the ultimate outcome of the heabeas corpus case must depend upon the ultimate outcome of the adoption case, the judgments in both cases must be reversed and the causes remanded to the Court of Appeals for further proceedings in accordance with this opinion.

Judgments reversed and causes remanded.

Weygandt, C. J., Taft and Matthias, JJ., concur.
Zimmerman, Stewart and Bell, JJ., dissent.