(No. 32212.—

FRANCES BRADECICH, Appellee, *vs.* FRANCES B. RIVARD
*et al.,* Appellants.

*Opinion filed January 24, 1952.*

STREETER, NICHOLS & PETERSEN, and DYER & DYER, both of Kankakee, for appellants.

EVA L. MINOR, and C. M. GRANGER, both of Kankakee, for appellee.

Mr. CHIEF JUSTICE DAILY delivered the opinion of the court:

Frances Bradecich, appellee, instituted this suit in the circuit court of Kankakee County to set aside a warranty deed dated August 4, 1949, by which she conveyed her residence property in the village of Bradley for a recited consideration of $10 to Frances and Omer Rivard, her daughter and son-in-law, the appellants. The Peoples Life Insurance Company and its trustee under a mortgage placed upon the premises by appellants, were made parties defendant in the complaint but do not join in this appeal. The trial court entered a decree which declared the deed null and void, held the trust deed to be a prior lien on the property and dismissed appellants' counterclaim by which they sought reimbursement for improvements alleged to have been made on the property.

At the time the deed was executed, appellee was 74 years of age and was a patient in a hospital. She had been confined there for two months and suffered a serious illness during which her life had been despaired of. She owned a residence property in the village of Bradley, which appellants were then renting from her, and during their visits to the hospital appellants asked appellee to sell the property to them, offering her a home with them if she did so. After the proposition had been discussed several times, appellee agreed on August 4, 1949, to sell the property to appellants for $2000, provided they would let her live in

their home the rest of her life. Appellants accepted the offer and, by their version of the occurrence Omer Rivard immediately went to his attorney and had a deed prepared, then came back to the hospital. He testified that appellee directed him to a notary in the hospital who executed the acknowledgment form and that he then returned to appellee's room where she first examined, then signed, the deed. Appellee says that she signed a blank paper with the understanding that it was to be used to enable appellants to get a loan of $2000 on the property. Appellants recorded the deed, then applied to a loan association for a loan of $2000 for the admitted purpose of paying appellee the consideration due her. The loan was approved but never accepted, for appellants decided in the meantime that they would get more money and remodel the house. In November they obtained a loan of $5500 from the Peoples Life Insurance Company and, according to their testimony, the entire amount, together with money and labor of their own valued at $2500, was used to remodel the house. Appellants admit that the $2000 consideration has never been paid and it appears that their only offer to do so occurred long after the execution of the deed, at which time they offered to give appellee a note payable in monthly installments and secured by a junior lien on the property. Appellee did not accept their offer.

The facts bearing upon appellants' agreement to furnish appellee with a home show that the latter was finally released from the hospital December 24, 1949, and took up residence with appellants. She remained only about three months. In telling of her departure she testified that she was treated unkindly in appellants' home; that her daughter told everyone she was crazy; that she was prevented from going to church, which was just across the street; and that she was kept in her room. She further related that in March, 1950, her attendance at church provoked a violent quarrel during which Frances Rivard

struck her in the jaw and threatened to kill her with a vase which was broken in the meleé. Appellee ran across the street to the parish house of the church where she remained until she was called for by a son, and from that day on she ceased to live with appellants. Frances Rivard testified that she and all her family treated appellee with kindness and consideration. She recalled the quarrel which caused her mother to leave home and stated that it began when appellee called the witness an abusive name. She denied having struck or threatened her mother but admitted that a vase had been accidentally broken when she jostled it while in the act of raising her hands to her own head. Two Rivard children corroborated their mother's version of the quarrel and it appears that a third child intervened and told his mother to stop quarrelling with appellee. There was some further trouble when appellee returned for her clothes, almost a year later. Appellee was accompanied by Anna Goodrich, her sister, and the latter testified that the visit caused Frances Rivard to go into a tantrum during which she threw a pan of grease on the kitchen floor and cut her hand while smashing a window. Although appellants take the position that appellee abandoned their home without cause on their part, they made it expressly clear while testifying that they had not solicited appellee's return, that they did not desire her to do so, and that they no longer had room for her in the home.

Based upon the foregoing evidence, the chancellor found the deed to be null and void and restored appellee to possession of the premises. He further found that the trust deed placed upon the premises was a valid and prior lien.

Appellants contend in this court that the failure of consideration was not the result of willful misconduct or fraudulent design on their part but resulted, first, from their inability to borrow sufficient money to pay both the costs of remodelling and the $2000 due appellee, and, second, from appellee's own conduct which prevented them

from giving her care and support in their home. It is the rule in this State that where an aged parent conveys land and the consideration is an agreement by a child to support and care for the grantor during the remainder of the grantor's life, and the child refuses or neglects to comply with the contract, the parent may in equity have a decree rescinding the contract, setting aside the deed and reinvesting the parent with the title to the real estate. · (*Mruk* v. *Mruk,* 379 Ill. 394; *Detienne* v. *Detienne,* 291 Ill. 439.) Where there is a failure by the child to perform his part of such a contract, a court of equity may infer a fraudulent intent in the first instance or a determination to abandon the contract, and in either case will declare a rescission of the contract and a restoration of the property to the parent in order to prevent a manifest wrong. (*Berry* v. *Heiser,* 271 Ill. 264; *Ropacki* v. *Ropacki,* 341 Ill. 301.) The failure to perform on the part of the child must be substantial, and in relation to material matters, such as would render the performance of the rest a thing different from what was contracted, (*Haslinger* v. *Gabel,* 344 Ill. 354; *Russell* v. *Robbins,* 247 Ill. 510,) and the contract will not be rescinded on the mere whim or desire of the parent. (*Mruk* v. *Mruk,* 379 Ill. 394; *Evert* v. *Evert,* 402 Ill. 360.) As pointed out in the *Mruk case,* at page 400, where conveyances by aged parents have been induced by promises of care and support, the promise is held to contemplate more than mere physical necessaries, and the breach by the child as to matters of kindness and personal care may be so substantial and material as to render the performance of his agreement a thing substantially different from that contemplated, causing equity to rescind the contract and restore the property to the aged parent.

The evidence in the present case expressly and conclusively shows that appellants have abandoned their agreement to provide a home to appellee for her life because they have flatly stated that they do not want her back and

do not have room for her. It must be said, too, that the evidence supports the conclusion of the chancellor, who heard and saw the witnesses, that the treatment accorded appellee by her daughter constituted a substantial breach of the agreement to care for her even before the said agreement was abandoned. In addition, there is present in this case a complete failure on appellants' part to pay appellee the $2000 agreed upon. Appellants are not to be excused on the grounds that their failure to pay arises from temporary financial inability over which they had no control, for, as in the case of *Evert* v. *Evert,* 402 Ill. 360, although the evidence here shows conclusively that the financial inability existed before the deed was executed, the deed was induced by representations that appellants would borrow $2000 on the property to pay the agreed consideration. Appellants started to fulfill their obligation then ignored it completely and placed themselves beyond performance by using the entire mortgage value of the premises for remodelling purposes. As shall more fully be shown in our discussion of appellants' counterclaim for moneys expended in improving the property, we do not perceive that appellee consented to, or acquiesced in, the remodelling in such a manner as to excuse appellants' failure to pay the $2000 or to postpone the rescission of their entire contract with appellee.

Further in regard to the $2000 consideration which had been promised for the deed, appellants argue that there was no time set for its payment and that for a court to now order forfeiture of title for its nonpayment would be to order a forfeiture because of the breach of a condition subsequent. In the first place, we do not feel that any facts exist which permit us to imply that the payment of consideration was to be in the nature of a condition subsequent and, second, the relief afforded to appellee is based on the fraudulent intent which is inferred to appellants, in the first instance, because of their later abandonment and

repudiation of their agreement. Considering the entire record and the points presented to this court, we are of the opinion that the chancellor acted properly when he found that there was a complete failure of consideration and restored appellee to her property.

The chief argument presented by appellants to this court is that the equities demand that they be reimbursed for labor and moneys of a value of $2500 which they allegedly expended in improving the property over and above the amount of the mortgage. It is true that if the real owner of land seeks the aid of a court of equity to establish his title or to recover land, he may be required to do equity by compensating the occupant for improvements to the extent that they have enhanced the value of the property, if the improvements have been put there in good faith and through innocent mistake. (*Lagger* v. *Mutual Union Loan and Building Ass'n,* 146 Ill. 283; *Cable* v. *Ellis,* 120 Ill. 136.) While some doubt immediately arises as to appellants' good faith in view of their failure to pay the money consideration for the deed, there are other features of the record which preclude them from relief. The appraiser of the loan association, to whom appellants applied for a $2000 loan, placed a value of $5600 on the property before any improvements were made. In his application, Omer Rivard, himself, set the value at $6000. At the trial Rivard testified that the property was worth $9000 after the improvements and it was shown that the mortgage encumbrance remaining was then about $4900. The trial court expressly made the trust deed a prior lien to appellee's interest and in this court she states that she is willing to assume it. It is quickly apparent that the value of appellee's equity in the premises is now considerably less than it was when she was induced to convey to appellants. Her property is now encumbered to such an extent by appellants' acts that it would be a manifest wrong to

require her to bear the cost of remodelling the premises to suit their needs, unless it can be said that she has either expressly or impliedly promised to pay for the work. This court has held that in no event can allowances for improvements be made if they are unreasonably expensive or unsuitable, or made beyond the actual increase of value of the land as ascertained by its sale. *Ebelmesser* v. *Ebelmesser,* 99 Ill. 541; *Lagger* v. *Mutual Union Loan and Building Ass'n,* 146 Ill. 283.

Appellants do not contend that appellee directed them to remodel but base their claim to reimbursement upon her alleged acquiescence in the remodelling and her failure to object to it. Appellee testified that all the work was done while she was still a patient in the hospital; that she did not tell appellants to remodel; that she did not know that a mortgage had been placed upon the property; that she was never consulted or told of the plans; and that she had never agreed to pay for the work. There is some indication that she knew the house was to be "fixed" but it is obvious that she did not have such information of the extent and costliness of the improvements in relation to the value of the property that it could be said that she acquiesced in their being made. Since she was away from the property and in the hospital when the remodelling was accomplished, it can hardly be said that her failure to protest constituted an implied promise to pay for the improvements or a suffering of appellants to improve her home. Appellants make some contention that the remodelling was necessary if they were to provide appellee with a room but such an argument is not persuasive of a belief that the remodelling entailed would cost $8000, or that appellee should bear its expense. The counterclaim was properly denied.

For the reasons stated, the decree of the circuit court of Kankakee County is affirmed in all respects.

*Decree affirmed.*