WILLIAM E. DOOM, Exr. of the Estates of Elmer C. Doom and Jessie May Doom, Deceased, Plaintiff-Appellant, *v.* ELMER FARRELL DOOM et al., Defendants-Appellees.

(No. 11644; ■■■■■■■■■■

Fourth District—November 8, 1972.

Drach, Terrell & Deffenbaugh, of Springfield, for appellant.

Olsen & Miller, of Springfield, for appellees.

Mr. JUSTICE SMITH delivered the opinion of the court:

This is an appeal by the plaintiff-executor from judgment of the circuit court of Sangamon County refusing to set aside a deed made by the plaintiff's testatrix and her husband to their son and his wife, defendants. The deed in question was dated August 3, 1966, and conveyed a small residence property in Springfield to the two grantees. It contained the following provision:

> "Reserving, however, a life estate in the said Grantors wherein it is agreed that the Grantees shall remain with and care for said Grantors during their respective lives, either in the above de-

scribed premises or in such other home as may be established by the said Grantees for them."

The basic issue is whether or not there was a substantial compliance on the part of the grantees in the deed with this contract or whether they repudiated their contract.

The grantors in the deed were in their near 80's at the time of the deed. The deed was made August 3, 1966, and recorded. Shortly thereafter, the defendants moved into the property, lived with and cared for the grantors until the death of grantor Elmer C. Doom in 1968, and thereafter continued to live with and care for Jessie May Doom until June 16, 1969. Jessie died on December 12, 1969, and in the interim between June 16 and December 12, lived with various other members of her family. In December, 1968, Jessie became unable to manage her affairs and the plaintiff was appointed her conservator and after June 16, 1969, instituted this suit to set aside the deed of the property alleging that on and after June 16, the defendants had failed to comply with their contract either in whole or in part and had failed and neglected to furnish a home or food or support of any kind to Jessie May Doom. This suit was apparently instituted in response to a letter received from defendants' attorney stating that they (defendants) could no longer care for the mother, that there appeared to be constant argument between Farrell's wife and the mother, and suggesting that the conservator make arrangements to have her cared for in the respective homes of the other members of the family, or arrange to have her placed in a nursing home. Grantees did not care for the mother after that date.

■■ It is clear that the grantees in the deed in question did not "remain with and care for said grantors during their respective lives" either in the house in which the mother had a life interest or in other premises which the grantees had the privilege of establishing for her. The grantees' performance of that contract came to an end on June 16. On June 13, the witness Melvin Doom went to the house to get his mother for the weekend. She was returned by him on the morning of June 16. The defendant, Elmer Farrell, came to the door, looked at his mother and said "we didn't expect you back here". The witness left. Later that same morning Farrell took his mother to his sister, left her with her suitcase and medication, and stated that he wanted nothing more to do with any of his family and that no phone calls were to be made at his house or his place of employment by his mother. This conduct together with the letter received from the defendants' attorney persuades us that the defendants had abandoned the contract or repudiated their obligations under it.

There is nothing in this record which warrants an inference or a sug-

gestion on the part of the grantees that they employed any fraudulent means in obtaining the deed to this property. The real issue is whether or not they effectively abandoned or repudiated their contract. We do not think the question of substantial performance is truly in this record. While the mother only lived six months following the transactions stated above, the fact remains that had she lived six years the obligation of the defendants would have been the same to care for her in her home or in a home provided for her by them, unless there intervened a legal or equitable basis for excusing performance on their part. When both grantees were sick for a period of a month or two, the other members of the family stepped in and did not then nor do they now suggest that such temporary inability operated as a breach of the contract. We deal here not with a temporary, frivolous or a whimsical repudiation of the agreement, but a total abandonment and repudiation on the part of the grantees.

In *Bradecich v. Rivard*, 411 Ill. 214, 103 N.E.2d 367, the court points out that where there is a failure by a child to perform his part of a contract, a court of equity may infer a fraudulent intent in the first instance or a determination to abandon the contract and in either case will declare a forfeiture of the contract and a restoration of the property to the parent in order to prevent a manifest wrong. Where the right to rescind exists, the grantor is entitled to an accounting for the rents, issues and profits from the property conveyed and an adjustment of the equities between the parties. (*Corzine v. Keith*, 384 Ill. 435, 51 N.E.2d 538.) Such is the case here. In *Smith v. Condo*, 28 Ill.App.2d 72, 169 N.E.2d 812, it is stated: "There is an unquestioned right to rescind an agreement involving conveyances of property in consideration of a promise to support where the grantee to the conveyance repudiates or substantially fails to perform the agreement". In the instant case, shortly after June 16, the conservator acting for his ward instituted the present suit. The conservator of the estate of an incompetent appears for and represents his ward in all legal proceedings. (*Wascher v. Lundeen*, 32 Ill.App.2d 239, 177 N.E.2d 440.) Plaintiff as conservator initiated an action to rescind the deed during the lifetime of his incompetent and this was equivalent to an action on her part to rescind. That cause of action was an asset of her estate and this being so, then the cause of action survived the death of the decedent and her executor would carry on. *Fossett v. Fossett*, 411 Ill. 545, 104 N.E.2d 617.

There is nothing in this record from which this court can make a determination of where the equities lie between the parties on a reconveyance of the property. Accordingly, the trial court is reversed and the cause remanded to that court with directions to take an accounting be-

tween the parties as to their respective equities and directing an adjustment of such equities in accordance with such findings either by the payment of money or reconveyance of the property as equitable principles shall dictate.

Reversed and remanded with directions.

TRAPP, P. J., and CRAVEN, J., concur.