Luella B. Clow *et al.*, Plaintiffs-Appellants, *v.* Chicago Title & Trust Company *et al.*, Defendants-Appellees.

(No. 71-185;

Third District—December 15, 1972.

*Rehearing denied February 20, 1973.*

Henry T. Synek, of Chicago, (Francis Dunn, of counsel,) for appellants.

Albin Dommermuth, of Naperville, for appellees.

Mr. JUSTICE DIXON delivered the opinion of the court:

This is an appeal from a judgment of the Circuit Court of Will County, Illinois, which found that the plaintiffs had failed to sustain the burden of proof as to the matters alleged in each count of their complaint, and from an order which denied the plaintiffs' post-trial motion.

The plaintiffs' complaint was for cancellation of an assignment of a beneficial interest in a land trust; cancellation of an agreement for support and transfer of property which provided for the assignment; an injunction; an accounting; and a declaration that ownership of interests under the land trust was as the plaintiffs claimed.

The plaintiffs were Luella B. Clow, a widow, and Caroline C. Collins, her daughter. Luella B. Clow died before the case came to trial, and Caroline C. Collins as her executor was substituted as plaintiff. The defendants were Oliver Boyd Clow and William F. Clow, the sons of Luella B. Clow and brothers of Caroline C. Collins.

The property held in the land trust was a 203-acre farm which had formerly belonged to the mother, Luella B. Clow. In 1959 Mrs. Clow had conveyed it to Chicago Title and Trust Company as trustee under a land trust. The beneficial ownership under the land trust was allocated as follows: ⅔ to Luella B. Clow, with full power to assign, and in the event of her death during the existence of this trust, if not previously assigned, to her three children in equal shares, and ⅑ to each of the three children, Caroline C. Collins, Oliver Boyd Clow, and William F.

Clow. The mother and the three children all agreed orally, however, that the mother, Luella B. Clow, was to have all the income from the farm during her lifetime.

Shortly after creating the land trust, Mrs. Clow decided to give additional $\frac{1}{18}$ interests to each of her three children. This was accomplished by an assignment dated December 20, 1960. This left her with a $\frac{1}{2}$ interest in the land trust and increased the shares of each of the three children to $\frac{1}{6}$.

More than two years later, on March 22, 1963, Mrs. Clow executed an assignment of her remaining $\frac{1}{2}$ interest in the land trust to her two sons, omitting her daughter. At the same time she and her sons entered into an agreement for support and transfer of property. This agreement provided that in exchange for the $\frac{1}{2}$ interest in the trust and possession of the trust farm, the sons were to pay their mother $300 per month for the remainder of her life, plus any unusual medical or hospital expenses she might be unable to pay, and taxes on both the trust farm and another farm where the mother lived, which was called by the parties the home farm. This was a 280-acre farm which had formerly belonged to Mrs. Clow's husband, who had devised it to her for life and then to the children. Oliver Boyd Clow was the tenant of the trust farm, and William F. Clow was the tenant of the home farm.

Mrs. Clow and her sons did not tell her daughter, Mrs. Collins, about the 1963 assignment to the sons and the support agreement made with them. In August of 1965 Mrs. Collins learned from Chicago Title and Trust Company about the assignment, and she then called the family together and learned about the support agreement. It is these two instruments which Mrs. Collins, individually and as executor, now wants invalidated.

Many meetings of the family were held during the years from 1959 to 1967 to consider how the mother's estate could be equitably divided. Apparently the later meetings became quite acrimonious. Meanwhile Mrs. Clow's physical condition had begun to deteriorate. She was also becoming forgetful. In 1965 a couple was procured to stay with her. In February of 1966 Mrs. Collins filed a petition to have her mother declared incompetent, but no adjudication of incompetency followed. On December 7, 1966, Mrs. Clow signed an instrument which declared that the 1963 assignment to her sons was invalid and stated that she assigned her $\frac{1}{2}$ interest in the land trust to her daughter, Caroline C. Collins. In the early summer of 1967 Mrs. Collins assumed responsibility for her mother's financial affairs. On March 22, 1968, the two of them filed their complaint to set aside the assignment dated March 22, 1963,

and the support agreement. On December 16, 1968, at the age of 81, Mrs. Clow died.

The complaint filed by Mrs. Clow and Mrs. Collins alleged the existence of a fiduciary relationship between the sons and their mother; undue influence by the sons; lack of any consideration for the assignment in view of the inadequacy of the stated consideration compared to what the mother transferred to her sons; fraud shown by this inadequacy; lack of intent on the part of the mother to sell or give her ½ interest in the trust to the sons; failure of consideration by reason of the sons' not making all the payments which the support agreement required; refusal of Oliver Boyd Clow to account for rentals collected from the trust farm from 1969 to date; and ownership of the disputed ½ interest by either the mother, as stated in Count I, or the daughter, as stated in Count II.

The sons in their answer denied that there had been a fiduciary relationship, undue influence, unfairness, fraud, a misunderstanding, or a failure to account to their mother and make the payments due her, and alleged, further, that the support agreement was a valuable consideration for the assignment of the trust interest to them because it gave their mother security regardless of what income might be derived from the farm property, and that love and affection also provided a good consideration supporting the transfer to them.

Thereafter the complaint was amended to state that the court should declare the agreement for support and transfer to be a leasing agreement, and the assignment to be only a security instrument given to provide a lien for improvements which had been made by Oliver Boyd Clow on the trust farm and William Clow on the home farm. The defendants filed an answer in which they alleged that the instruments were what they purported to be and expressed the intent of the parties.

We have considered carefully the testimony relative to the existence of a fiduciary relationship between Mrs. Clow and her sons in March of 1963 when the questioned assignment was made. Oliver Boyd Clow "possibly wrote checks for her," "took his mother a lot of places," and "was fairly close to his mother." William Clow "helped his mother in any way he could," "helped her make out deposit slips," and "did have a very close working relationship with his mother." She was elderly and under doctors' care, and the testimony of Mrs. Collins indicates that the following year "in 1964 her mother was unable to handle her affairs." A fiduciary relationship entails special confidence and trust on one side and dominance and influence on the other. (*McCrillis v. Utterback*, 397 Ill. 550, 554.) It does not obtain between a parent and child as a matter of law but must be established by competent evidence,

and the proof must be clear and convincing and so strong, unequivocal, and unmistakable as to lead to but one conclusion. (*Chicago Land Clearance Com. v. Yablong,* 20 Ill.2d 204, 207; *Stewart v. Sunagel,* 394 Ill. 209, 214.) The trial court was not persuaded that the existence of a fiduciary relationship in 1963 between Mrs. Clow and her sons was clearly, convincingly, and unmistakably shown by the evidence, and therefore ruled that the plaintiffs had failed to sustain the burden of proof on this issue. We are satisfied that the decision of the trial court on this point was not against the manifest weight of the evidence, and find no reversible error here.

██ Likewise, the relationship of parent and child does not raise any presumption of undue influence, and to set aside a transfer for undue influence requires proof of wrongful influence operating with such force as to deprive the transferor of free agency. (*Ropacki v. Ropacki,* 341 Ill. 301, 307; *Eslick v. Montgomery,* 3 Ill.App.3d 447, 452.) This also was a question of fact to be determined from the evidence, and we do not believe that upon the record presented here the trial court was in error in failing to find undue influence.

██ The argument is advanced that no consideration was given for the assignment to the sons, because Mrs. Clow's income was reduced in the transaction and she had no need for the security which the support agreement promised. However, it does not appear to us to have been a certainty in 1963 that the agreement had nothing to offer Mrs. Clow, for if expensive and prolonged medical care had become necessary, the agreement might clearly have worked out to her advantage. (See Eckhardt & Allen, "Planning for the Farmer," 1963 U. Ill. L.F. 367, 397.) But we need not determine whether the support agreement was equal in value to the property interest which was assigned in exchange for it. (See 1 Corbin on Contracts Sec. 127.) If no consideration had been given, the assignment to the sons could be upheld as a gift. (*Frey v. Wubbena,* 26 Ill.2d 62, 70; *In re Estate of Toigo,* 107 Ill.App.2d 395, 401. On the sufficiency of love and affection as "good" consideration see 2 Grigsby, Illinois Real Property Law & Practice Sec. 733.) We find no error in the trial court's failure to invalidate the assignment for want of consideration, or to find that fraud was shown by the alleged inadequacy or absence of consideration.

The argument is also made that Mrs. Clow did not intend either to sell or to give her trust interest to the sons, but rather, the assignment was intended to be a security instrument and the support agreement was intended by the parties to be a leasing agreement. This is claimed to be established by various subsequent instruments, including an insurance policy and an application for approval of an airport naming Mrs. Clow

as one of the owners of the trust farm, checks from the sons marked "rent," tax returns of Mrs. Clow and her sons showing payments from the sons to her as farm rent, lists of improvements placed by the sons on the trust farm and the home farm, and a 1966 receipt from Mrs. Clow which speaks of a "leasing agreement" with her sons. This is claimed to be established also by testimony as to subsequent conversations indicating that the assignment might be "unwound" if a fair division of the mother's estate could be reached which would take proper account of the sons' improvements. On the other hand, a sister-in-law of Mrs. Clow testified that in 1964 Mrs. Clow had told her she had conveyed part of the trust farm to her two boys, that her daughter had a great deal, that the boys had worked for years, that she had wanted to do it, that it was right that she should do it, and that she was glad she had done it. The sister-in-law testified, further, that on another occasion Mrs. Clow had said she had not told her daughter about the transfer to the sons; and that on still another occasion Mrs. Clow had told her she had never regretted the transfer to the sons for an instant. She also testified that Mrs. Clow was capable and bright and in good mental condition in 1964.

■ ■ The trial court may have considered the insurance policy and airport application to have treated Mrs. Clow as one of the owners out of an excess of caution; the checks, tax returns, and receipt as representing an effort to ensure deductibility of the support payments; and the improvement lists and talk of "unwinding" the assignment as meaning that the sons would take the ½ interest into consideration in a general settlement, but not as meaning that there was any indebtedness for the cost of the improvements, any obligation upon the sons to give up any part of the assigned ½ interest, or any imperfection in the assignment as an absolute and unqualified transfer. Furthermore, it is what the parties did or said at the time of the transaction that controls, not what is said later. (*In re Estate of Nelson* (1971), 132 Ill.App.2d 544, 270 N.E.2d 65, 71.) In order to establish that a transfer which is absolute in form is a mortgage or other security instrument, the proof must be clear and convincing. (*Stenwall v. Bergstrom,* 405 Ill. 281, 289.) Our Supreme Court has said: "Although a trial court's holding is always subject to review, this court will not disturb a trial court's finding and substitute its own opinion unless the holding of the trial court is manifestly against the weight of the evidence. (*Brown v. Zimmerman,* 18 Ill.2d 94, 102; *Illinois Nat. Bank & Trust Co. of Rockford v. County of Winnebago,* 19 Ill.2d 487, 495; *Mortell v. Beckman,* 16 Ill.2d 209.) Underlying this rule is the recognition that, especially where the testimony is contradictory, the trial judge as the trier of fact is in a position superior to a court of review to observe the conduct of the witnesses while testifying, to determine

their credibility, and to weigh the evidence and determine the preponderance thereof. We may not overturn a judgment merely because we might disagree with it or might, had we been the trier of facts, have come to a different conclusion." (*Schulenburg v. Signatrol, Inc.*, 37 Ill.2d 352, 356.) Accordingly we decline to disturb the trial court's conclusion in this case that Mrs. Clow knowingly and intentionally made an absolute transfer to the sons in 1963.

■■ Failure of consideration is also made an issue by the pleadings. From the testimony the trial court may reasonably have concluded that almost all the payments due from the sons under the support agreement had been made. Only such a substantial shortage in payments as would indicate either a fraudulent intent in the first instance or a determination to abandon the agreement would be justification for a court's declaring a rescission of the agreement and a restoration of the property to the parent. (*Bradecich v. Rivard*, 411 Ill. 214, 218.) We cannot find that the trial court's decision on this issue is against the manifest weight of the evidence.

■■ We have considered the arguments on admissibility of evidence but do not find reversible error in any of the trial court's rulings on the evidence. However, it appears to us from our review of the testimony and exhibits that the support payments due from the sons to Mrs. Clow under their agreement were discontinued in 1967. We therefore hold that an accounting should have been granted as prayed.

The judgment of the circuit court of Will County is affirmed in part but reversed in part and remanded for an accounting.

ALLOY, P. J., and SCOTT, J., concur.