NOTICE

Decision filed 01/10/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 220778-U

NOS. 5-22-0778, 5-22-0783 cons.

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jackson County. |
| | ) | |
| v. | ) | Nos. 19-CF-473, 20-CF-176 |
| | ) | |
| KEVONTA C. THOMAS, | ) | Honorable |
| | ) | Ralph R. Bloodworth III, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE WELCH delivered the judgment of the court.
Justices Cates and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Where postplea counsel did not include any recognized basis for withdrawal of a plea in the defendant's motions to vacate his guilty plea and acknowledged that he had filed the motions for the sole purpose of being allowed to file motions to reconsider the defendant's sentences, counsel did not strictly comply with the requirements of Rule 604(d) (Ill. S. Ct. R. 604(d) (eff. July 1, 2017)). The appropriate remedy is to remand the cause for strict compliance and further proceedings on a new motion to vacate the plea.

¶ 2    The defendant, Kevonta C. Thomas, pled guilty to one count each of identity theft and unlawful use or possession of a weapon by a felon in a negotiated plea agreement involving multiple cases pending against him. In exchange for his plea, the State dropped numerous additional charges, waived a mandatory Class X sentence enhancement on one charge (see 730 ILCS 5/5-4.5-95(b) (West 2020)), and agreed to recommend a sentence cap of 10 years on the other charge. The court held a sentencing hearing at which it considered evidence related to the

1

defendant's mental health diagnoses. The court imposed consecutive sentences of nine years for the weapons charge and six years for identity theft.

¶ 3    The defendant subsequently filed motions to withdraw his plea along with motions to reduce his sentences. He initially asserted that he wished to withdraw his plea because no psychological examination of him was performed by the Illinois Department of Corrections (IDOC); however, he dropped this argument at the hearing on his motions and acknowledged that he was seeking to withdraw his plea because he was required to do so in order to challenge his sentences. The court denied the motions. The defendant appeals, arguing that (1) his attorney did not strictly comply Illinois Supreme Court Rule 604(d) (Ill. S. Ct. R. 604(d) (eff. July 1, 2017) because he failed to set forth a legal basis for the withdrawal of his plea and (2) the appropriate remedy is remand for strict compliance with the rule and new proceedings. We reverse and remand.

¶ 4                                    I. BACKGROUND

¶ 5    In October 2019, the defendant was charged with one count of identity theft (720 ILCS 5/16-30(e)(1)(A)(iii) (West 2018)) in Jackson County case No. 19-CF-473. The charge stemmed from an incident in which his sister, Keshauna Thomas, stole a wallet. The defendant then used a credit card found in the wallet to purchase over $2,000 worth of merchandise. The charging information stated that although the offense is a Class 2 felony, the defendant was subject to mandatory Class X sentencing due to two prior felony convictions. See 730 ILCS 5/5-4.5-95(b) (West 2020).

¶ 6    In May 2020, the State filed a seven-count information in Jackson County case No. 20-CF-176 charging the defendant with one count of being an armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2020)), two counts of unlawful use or possession of a weapon by a felon (*id.* § 24-1.1(a)), one count of unlawful restraint (*id.* § 10-3(a)), one count of criminal trespass to a residence

2

(*id.* § 19-4(a)(2)), one count of aggravated fleeing or attempting to elude a peace officer (625 ILCS 5/11-204.1(1)), and one count of driving 35 or more miles per hour over the posted speed limit (*id.* § 11-601.5(b)). The information stated that the defendant was eligible for extended term sentencing on five of the charges.

¶ 7    On April 19, 2021, the defendant pled guilty in a negotiated plea agreement involving 19-CF-473, 20-CF-176, and six other pending cases. Pursuant to the agreement, the defendant pled guilty to one count of unlawful use or possession of a weapon by a felon in 20-CF-176 and the charge of identity theft in 19-CF-473. In exchange for his plea, the State agreed to dismiss the six remaining charges in 20-CF-176 and to dismiss six other pending cases in their entirety. We note that those six cases involved four felony charges and five misdemeanor charges. The State also agreed to waive the mandatory Class X sentence enhancement on the identity theft charge and to recommend a sentence cap of 10 years on the unlawful use or possession of a weapon charge, which otherwise carried a potential term of 3 to 14 years. See 720 ILCS 5/24-1.1(e) (West 2020). Despite these sentencing concessions, the court referred to the plea as an "open plea" several times during the hearing.

¶ 8    The court ordered a presentence investigation report (PSI). The PSI prepared pursuant to this order contained substantial information concerning the defendant's mental health diagnoses. It indicated that he had been diagnosed with major depressive disorder, anxiety disorder, posttraumatic stress disorder, antisocial personality disorder, bipolar disorder, and pica, a mental health condition involving compulsive ingestion of non-food items. The report indicated that the defendant's condition improved when he was treated at Madden Mental Health Center.

¶ 9    The PSI also set forth the defendant's history of delinquency adjudications, criminal convictions, and disciplinary infractions while incarcerated in IDOC. The PSI indicated that the

3

defendant, who was 25 years old at the time it was prepared, had been adjudicated delinquent twice and convicted as an adult of 11 felony charges in addition to those involved in the plea agreement at issue here. The report further indicated that he had incurred numerous disciplinary infractions in prison.

¶ 10    The matter proceeded to a sentencing hearing on June 23, 2021. Neither party presented additional evidence at the hearing, instead relying upon the evidence included in the PSI to make their arguments. The State asked the court to sentence the defendant to 7 years for identity theft, the maximum nonextended term for a Class 2 felony (see 730 ILCS 5/5-4.5-35(a) (West 2020)), and to 10 years for unlawful use or possession of a weapon by a felon, the agreed-upon recommended cap. The defendant asked the court to sentence him to probation on the identity theft charge and impose the three-year minimum sentence for unlawful use or possession of a weapon by a felon (see 720 ILCS 5/24-1.1(e) (West 2020)).

¶ 11    Assistant State's Attorney Andrew Suthard began his argument by stating, "Mr. Thomas, the only way I know how to describe him is that he is a habitual criminal." Suthard further emphasized that the identity theft charge involved the use of a stolen credit card to purchase a substantial amount of merchandise, valued at approximately $2,500. Suthard argued that two statutory factors in aggravation were present in both cases: (1) the defendant's substantial criminal history (730 ILCS 5/5-5-3.2(a)(3) (West 2020)) and (2) the need to deter others (*id.* § 5-5-3.2(a)(7)). He argued that an additional factor was applicable to the unlawful use or possession of a weapon charge: the defendant's conduct threatened serious harm (*id.* § 5-5-3.2(a)(1)). Suthard explained that the defendant, while armed, barricaded himself in an apartment with two individuals and refused to allow them to leave.

¶ 12 Suthard acknowledged the defendant's youth and noted that if the court imposed the aggregate sentence of 17 years the State was requesting, the defendant could serve 50% of that and be released when he was "still young" with ample opportunity to "make something of himself" if he chose to do so. He expressed doubts, however, that the defendant had much if any rehabilitative potential considering his significant criminal history.

¶ 13 Defense counsel Christian Baril emphasized the defendant's diagnoses with "serious mental health conditions." He acknowledged the defendant's significant criminal history, but he argued that this conduct was largely the result of the defendant's mental illnesses. He noted that the defendant had improved somewhat since his treatment at Madden, which involved a change in his medications.

¶ 14 Baril argued that three factors in mitigation were present. First, he argued that the defendant was suffering from serious mental illnesses that substantially impacted his ability to conform his conduct to the requirements of the law (*id.* § 5-5-3.1(a)(16)). Second, he contended that the defendant was a person with an intellectual disability (*id.* § 5-5-3.1(a)(13)). He explained that this factor was relevant due to the defendant's apparent "inadequate social adjustment." See *id.* § 5-1-13. Third, he argued that the character and attitude of the defendant indicated that he was unlikely to reoffend (*id.* § 5-5-3.1(a)(9)). Baril acknowledged that the defendant had a substantial criminal history, but he argued that the defendant's willingness to take responsibility for his conduct demonstrated an intent to rehabilitate himself. He also pointed to evidence in the PSI that the defendant's new medication appeared to be working, which made him less likely to reoffend.

¶ 15 Baril argued that two additional factors were applicable with respect to the identity theft charge. First, he pointed out that the defendant's sister admitted that she was the person who actually stole the victim's wallet. He argued that, as such, the defendant's conduct was induced or

facilitated by someone else (*id.* § 5-5-3.1(a)(5)). Second, he argued that no serious harm occurred or was contemplated as a result of the defendant's conduct in committing this offense (*id.* § 5-5-3.1(a)(1), (a)(2)).

¶ 16    Suthard responded to the defense arguments concerning the defendant's mental health by arguing that the behavior underlying these diagnoses was "calculated" so that the defendant could get out of jail and be transferred to a mental health facility. He further speculated that the improvement observed after the defendant was transferred to Madden was the result of the defendant experiencing a mental health facility and deciding that it was "scarier" than prison. Suthard acknowledged, however, that this was speculation. Both Baril and the defendant responded to Suthard's allegations, stating that there was no basis for his assumptions.

¶ 17    The court allowed the defendant to make a statement in allocution. The court then ruled from the bench. The court stated that it considered the following factors: (1) that the defendant has taken responsibility for his actions; (2) the cost to the State of incarceration; (3) that the defendant has a prior history of criminal activity and delinquency (*id.* § 5-5-3.2(a)(3)); (4) the need to deter others (*id.* § 5-5-3.2(a)(7)); and (5) that the defendant has a daughter (*id.* § 5-5-3.1(a)(18)). The court next stated that it considered "whether or not" various statutory factors in mitigation applied. Addressing the defendant, the court stated, "I have known you a while and I have noticed a change in particular since you went to that Madden facility. So, I certainly will consider that."

¶ 18    Before pronouncing sentence, the court noted that consecutive sentences were mandatory and that the court was not bound by the State's recommendation of a 10-year sentence cap on the unlawful use or possession of a weapon charge. The court sentenced the defendant to six years for identity theft in 19-CF-473 and nine years for unlawful use or possession of a weapon in 20-CF-176. The court stated that the mandatory minimum fines on both charges "will be assessed but

6

vacated after any bond posted is applied and found uncollectable." The court noted that this would give the defendant "a chance to make a fresh start" after his release.

¶ 19 The court then provided the following admonishments: "Mr. Thomas, you got 30 days to do several things. You can file a motion to reconsider these sentences if you would like to do that." The court explained that the motion must be in writing and must set forth the legal bases for reconsidering the sentence and that any reason not included in the motion would be forfeited on appeal. Next, the court stated, "You can also file a motion to vacate and withdraw your open pleas in these two cases." Again, the court explained that the motion must be in writing and that any argument not contained in the written motion would be forfeited on appeal. The court reiterated that any motion must be filed within 30 days and informed the defendant that if either type of motion was denied, he could appeal that ruling. The court did not admonish the defendant that he must file a motion to withdraw his plea in order to challenge his sentences.

¶ 20 On July 22, 2021, Baril filed on behalf of the defendant motions to withdraw his plea in both cases along with motions to reduce his sentence. In the motions to withdraw plea, the defendant asserted that (1) he was moving to withdraw his plea because he was required to file such a motion to be allowed to file a motion to reconsider his sentence under *People v. Linder*, 186 Ill. 2d 67, 74 (1999); and (2) he wanted to withdraw his plea because he was not given a mental health examination by IDOC. Baril requested leave to file an amended motion if necessary, noting that the plea hearing transcript was not yet available and that he had encountered difficulties conferring with the defendant because his scheduled calls with the defendant had been rescheduled multiple times by IDOC. Baril indicated that he intended to file a certificate of compliance with Rule 604(d) after reviewing the transcript of the plea hearing.

¶ 21   Subsequently, Baril filed motions for transcripts in both cases and multiple motions to continue the hearing on the motions to withdraw plea due to difficulties arranging calls with the defendant. The court granted the requests for continuances. On February 9, 2022, Baril filed facially valid certificates of compliance with Rule 604(d) in both cases. He did not file an amended motion to withdraw the defendant's plea in either case.

¶ 22   On November 30, 2022, the matter came for a hearing on the defendant's motions to withdraw his plea and his motions to reduce his sentences. Addressing the motions to withdraw plea, Baril acknowledged to the court that the "sole reason" the defendant sought to withdraw his plea was the requirement of doing so in order to challenge his sentences. Baril noted that although he "did mention in paragraph 4 [of the motion to withdraw plea] that the defendant indicated that he wished to withdraw his plea because he was not given a mental health examination by the Department of Corrections," he was "not arguing that today." In response, the State argued that the defendant was not entitled to withdraw his plea without presenting a recognized basis for doing so. The court denied the motions to vacate the defendant's plea.

¶ 23   Despite denying the motions to vacate the plea, the court next allowed the parties to present arguments on the defendant's motions to reduce his sentence. The defendant argued that the court gave too little weight to the mitigating evidence, highlighting the significant evidence of his mental health diagnoses. In response, the State argued, "Your Honor, I'm not sure how Counsel can know what weight you actually gave those factors, but I would note that in the sentencing hearing, you considered all of them." The State also emphasized the defendant's significant criminal history. We note that the State did not contend that the court could not consider the defendant's motions to reduce his sentences because it had not granted his motions to withdraw his plea; it only addressed the merits of the motion to reduce the sentences.

8

¶ 24    In ruling from the bench, the trial judge noted that he reviewed the transcript from the sentencing hearing and considered the arguments of both parties. The court denied the motions and advised the defendant of his appeal rights. This timely appeal followed.

¶ 25                                    II. ANALYSIS

¶ 26    On appeal, the defendant argues that Baril failed to strictly comply with Rule 604(d) because he failed to amend the motion to withdraw plea to state a recognized basis for the withdrawal of a guilty plea. He further contends that the appropriate remedy is remand for the opportunity to file new motions and proceedings that comply with the rule's requirements. The State argues that remand is not required because despite any shortcomings in Baril's performance, the defendant nevertheless had a full and fair hearing on his claims. See *People v. Brown*, 2023 IL App (4th) 220573, ¶ 50. For the reasons that follow, we agree with the defendant.

¶ 27    Rule 604(d) provides that a defendant who has pled guilty may not appeal the judgment entered on his plea unless he files a motion to withdraw the plea within 30 days after sentencing. If he is challenging only his sentence, he must file a motion to reconsider the sentence within the same time. Ill. S. Ct. R. 604(d) (eff. July 1, 2017). Where, as here, a defendant agrees to plead guilty in exchange for a recommended sentence cap, he may not challenge a sentence below the agreed-upon cap without first seeking to withdraw his plea. *Linder*, 186 Ill. 2d at 74. The purpose of these motion requirements is to allow the trial court to engage in any necessary fact-finding concerning matters outside the record while " 'witnesses are still available and memories are fresh' " and to correct any errors in the plea proceedings. *People v. Janes*, 158 Ill. 2d 27, 31 (1994) (quoting *People v. Wilk*, 124 Ill. 2d 93, 104 (1988)).

¶ 28    As the trial court in this case correctly advised the defendant, any issue not raised in a motion to withdraw plea is deemed forfeited on appeal. *Id.* at 35 (citing *People v. Dickerson*, 212

Ill. App. 3d 168, 171 (1991)). Because of this strict forfeiture rule, it is imperative that a defendant have the assistance of counsel in presenting his motions to the court. *Id.*

¶ 29    To that end, Rule 604(d) also requires that an attorney representing a defendant in postplea proceedings certify to the court that he has (1) consulted with the defendant to ascertain the defendant's claims of error, (2) examined the trial court record and the transcripts of the plea proceedings and sentencing hearing, and (3) "made any amendments to the motion necessary for adequate presentation of *any defects* in those proceedings." (Emphasis added.) Ill. S. Ct. R. 604(d) (eff. July 1, 2017). The certification requirement "enables the trial court to [e]nsure that counsel has reviewed the defendant's claim and considered all relevant bases for the motion to withdraw the guilty plea [and/or the motion] to reconsider the sentence." *Linder*, 186 Ill. 2d at 69.

¶ 30    Strict compliance with these requirements is mandatory. *Janes*, 158 Ill. 2d at 33; *Brown*, 2023 IL App (4th) 220573, ¶ 30. The remedy for failure to comply with any of Rule 604(d)'s requirements is to remand the matter to the trial court "for the filing of a new motion to withdraw guilty plea or to reconsider sentence and a new hearing on the motion." *Janes*, 158 Ill. 2d at 33. The appropriateness of this remedy does not depend upon a showing of ineffective assistance of postplea counsel. *People v. Bridges*, 2017 IL App (2d) 150718, ¶ 6 n.1.

¶ 31    Here, Baril filed certificates of compliance in both cases, each stating that he consulted with the defendant, that he reviewed the trial court record and the transcripts from the plea hearing and sentencing hearing, and that he made any necessary amendments to his motions for adequate presentation of the defendant's claims. However, even when postplea counsel files a facially valid Rule 604(d) certificate, like those filed by Baril, we must review the record to determine whether he did, in fact, fulfill his obligations under the rule. *Id.* ¶ 8. The question of strict compliance with Rule 604(d) is subject to *de novo* review. *Brown*, 2023 IL App (4th) 220573, ¶ 31.

10

¶ 32    The defendant argues that the motions to withdraw plea filed by Baril refute the claim in his certificates of compliance that he made any necessary amendments to the motions. This is so, he contends, because the motions "did not allege any legal grounds upon which a guilty plea could arguably be withdrawn." We agree.

¶ 33    A defendant does not have an absolute right to withdraw his plea. *People v. Burge*, 2021 IL 125642, ¶ 37. Instead, he must establish a legally recognized basis for withdrawal of the plea. *People v. Milsap*, 2022 IL App (4th) 210192, ¶ 17. A defendant should be allowed to withdraw his plea if he can show that he pled guilty due to a misapprehension of pertinent facts or law or where there is doubt as to his guilt and justice would be better served by allowing him to withdraw the plea and proceed to trial. *Id.* (citing *People v. Hughes*, 2012 IL 112817, ¶ 32). Another basis upon which to allow a defendant to withdraw a plea is ineffective assistance of plea counsel. See *People v. Curtis*, 2021 IL App (4th) 190658, ¶ 31. To succeed on such a claim, a defendant must show both that plea counsel's performance was objectively unreasonable and that he was prejudiced as a result. *Hughes*, 2012 IL 112817, ¶ 44. To demonstrate the necessary prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have [pled] guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Conclusory allegations are insufficient to make this showing. *People v. Valdez*, 2016 IL 119860, ¶ 29. Rather, the defendant must demonstrate that it would have been reasonable under the circumstances of the case to reject the plea deal and insist on going to trial. *Id.*; *Hughes*, 2012 IL 112817, ¶ 65.

¶ 34    In contending that Baril failed to allege any recognized basis to withdraw his plea, the defendant likens this case to the Fourth District's recent decision in *People v. Cline*, 2023 IL App (4th) 220471-U. There, the defendant pled guilty to one count of being an armed habitual criminal

11

and one count of theft in two separate pending cases. *Id.* ¶¶ 5-6. In exchange for his plea, the State dropped a total of eight additional charges in both cases and dismissed three other pending cases in their entirety. *Id.* The trial court imposed consecutive sentences of 10 years for being an armed habitual criminal and 4 years for theft. Under truth-in-sentencing provisions, the armed habitual criminal sentence was required to be served at 85% while the sentence for theft was required to be served at 50%. *Id.* ¶ 7.

¶ 35 Acting through his plea attorney, the defendant subsequently filed a motion to withdraw his guilty plea, arguing that he was not aware of the requirement that he serve his first sentence at 85% and did not contemplate this requirement when he pled guilty. *Id.* ¶ 8. Plea counsel withdrew and was replaced by a new attorney. Postplea counsel did not make any amendments to the motion filed by the defendant's original attorney. *Id.* ¶¶ 10, 14.[1] He likewise did not attach any affidavits in support of the defendant's claim (*id.* ¶ 8), nor did he present evidence at the hearing on the motion to withdraw (*id.* ¶ 15).

¶ 36 On appeal from the trial court's denial of the motion to withdraw plea, the Fourth District agreed with the defendant that postplea counsel failed to strictly comply with Rule 604(d). *Id.* ¶ 18. In reaching this conclusion, the *Cline* court explained that counsel

"failed to provide any legally recognized basis for defendant to withdraw his guilty plea, such as defendant would not have pled guilty if he was correctly advised as to truth-in-sentencing or, alternatively, that [plea counsel] provided ineffective assistance of counsel by either (1) failing to properly advise him as to truth-in-sentencing or (2) incorrectly advising him as to truth-in-sentencing. This failure was further compounded by [postplea

---

[1]The trial court originally denied the motion after a hearing. *Cline*, 2023 IL App (4th) 220471-U, ¶¶ 11-12. However, the matter was remanded after an appeal due to postplea counsel's initial failure to file any Rule 604(d) certificate of compliance. *Id.* ¶ 13.

counsel] not calling defendant or [plea counsel] as witnesses at the hearing on defendant's motion." *Id.* ¶ 22. The court concluded that the record thus refuted the postplea attorney's attestation in his facially valid certificate of compliance that he made any necessary amendments to the original motion. *Id.*

¶ 37 The defendant contends that here, similarly, Baril failed to "connect [the defendant's] alleged misapprehension" concerning whether he would be given a mental health examination in IDOC to any legally recognized basis to withdraw his plea. He notes, for example, that Baril did not allege that the defendant would not have pled guilty had he known he would not be given a mental health examination, that he received ineffective assistance of counsel, or that there was any doubt as to his guilt. He argues that, "[a]t a minimum, by not pleading that [the defendant] would have proceeded to trial rather than plead guilty had he known he would not be given a mental health examination by IDOC, counsel failed to present [the defendant's] claims of any alleged defects in the proceedings."

¶ 38 In response, the State argues that *Cline* is "problematic" because truth-in-sentencing is a collateral consequence of pleading guilty. See *Hughes*, 2012 IL 112817, ¶¶ 43-45 (explaining that while a plea is not knowing and voluntary if the court fails to advise the defendant of the direct consequences of his plea, a failure to advise the defendant of collateral consequences does not render the plea unknowing or involuntary). The State further argues that the allegations the defendant suggests Baril should have added to his motion would not have provided a basis for withdrawing the plea. More specifically, the State contends that because receiving a mental health examination from IDOC is not a direct consequence of pleading guilty, any alleged misapprehension about it would not provide a basis to withdraw the plea. Likewise, the State contends, the defendant could not prevail on a claim of ineffective assistance of plea counsel where

13

it would not have been rational to insist on going to trial due to the significant amount of prison time the defendant would have faced had he rejected the plea agreement.

¶ 39 We need not resolve the State's arguments concerning the validity of *Cline* or the adequacy of the additional allegations the defendant suggests Baril might have included in his motions to withdraw the defendant's plea. As the defendant emphasizes and the State acknowledges, at the hearing on the motions, Baril abandoned the defendant's claim that he wanted to withdraw his plea because he did not receive a mental health examination while in IDOC. Instead, he acknowledged that the sole reason he filed a motion to withdraw the plea was to allow the defendant to ask the court to reconsider and reduce his sentence. As the State recognizes, this fact is dispositive.

¶ 40 To satisfy the requirement of strict compliance with Rule 604(d), the "hearing on a motion to withdraw a defendant's guilty plea must be more than a charade performed only to allow an appeal to proceed." *Bridges*, 2017 IL App (2d) 150718, ¶ 10. The rule contemplates something more than a " 'perfunctory type of motion and hearing' " intended only to overcome procedural hurdles. *Id.* ¶ 11 (quoting *People v. Keele*, 210 Ill. App. 3d 898, 903 (1991)). Because Baril conceded at the hearing that the motion to withdraw the defendant's plea was being offered only as a prerequisite to seeking to have the court reconsider his sentence, we must conclude that he did not strictly comply with the requirements of Rule 604(d) despite his facially valid certificate of compliance.

¶ 41 The State argues, however, that remand is not necessary here because the defendant received a full and fair hearing on his claim. In support of this contention, the State cites another recent Fourth District decision, *People v. Brown*, 2023 IL App (4th) 220573. We find *Brown* distinguishable.

¶ 42    That case involved a motion to withdraw a guilty plea on the basis of ineffective assistance of plea counsel. *Id.* ¶¶ 13-14. Postplea counsel failed to allege in the motion that the defendant would not have pled guilty if not for his plea counsel's alleged mistakes. In addition, he failed to attach affidavits to the motion in support of claims concerning matters outside the record. *Id.* ¶ 29. Despite these flaws in the motion, however, the trial court held a full evidentiary hearing on the ineffective assistance of counsel claim at which both the defendant and his plea counsel testified. *Id.* ¶¶ 16-21. In denying the motion to withdraw the plea, the court also considered the trial judge's own recollection of the plea proceedings. *Id.* ¶ 22.

¶ 43    On appeal, the Fourth District held that where counsel files a facially valid certificate of compliance and "the trial court determines after a full and fair hearing that the defendant's claims are meritless, defects in the pleadings do not justify a remand for further proceedings." *Id.* ¶ 50. The court emphasized the importance of attorneys ensuring that the postplea motions they file "are in proper form before signing Rule 604(d) certificates." *Id.* However, the court explained that "it would be an exercise in futility and a waste of judicial resources to remand for an attorney to replead a claim that has already been adjudicated meritless." *Id.*

¶ 44    The State argues that here, too, the defendant received a hearing on his claims and the court found them to be meritless. As such, the State contends, remand is unnecessary. We disagree.

¶ 45    In *Brown*, as we have just discussed, the trial court held a full evidentiary hearing on the defendant's claim of ineffective assistance of plea counsel. *Id.* ¶¶ 16-21. In other words, the defects in the motion to withdraw plea did not prevent the court from considering the merits of the defendant's argument that he should be allowed to withdraw his plea. Here, by contrast, Baril presented *no* arguments in support of the defendant's request to withdraw his plea at the hearing. Instead, he acknowledged that the sole purpose of filing the motions to withdraw plea was to allow

15

the defendant to go forward with his motions to reduce his sentences. The court thus denied the defendant's motions to withdraw his plea without considering the merits of any arguments to support them. As such, unlike what occurred in *Brown*, Baril's failure to strictly comply with Rule 604(d) prevented the court from hearing any arguments in support of the defendant's request to withdraw his guilty plea. Under these circumstances, the appropriate remedy is to remand the matter to the trial court to allow the defendant to file new motions, if he so desires, and to hold a hearing on those motions. See *Janes*, 158 Ill. 2d at 34.

¶ 46 The State argues that there are flaws in what it characterizes as the defendant's argument that he received ineffective assistance of postplea counsel. As we explained earlier, however, the necessity of remanding for compliance with Rule 604(d) does not depend on ineffective assistance postplea counsel. See *Bridges*, 2017 IL App (2d) 150718, ¶ 6 n.1.

¶ 47 In addition, the State contends that under *Brown*, the crucial analysis in determining whether remand is required is whether the defendant has shown "the requisite prejudice" from counsel's failure to strictly comply. We disagree with this reading of *Brown*. In *Janes*, the Illinois Supreme Court expressly rejected a harmless error analysis. See *Janes*, 158 Ill. 2d at 34; see also *People v. Shirley*, 181 Ill. 2d 359, 370-71 (1998) (reaffirming the *Janes* court's "call for strict compliance" and its renunciation of "the prior practice of determining whether errors in failing to comply with Rule 604(d) were harmless or prejudicial"); *Cline*, 2023 IL App (4th) 220471-U, ¶¶ 23-24 (rejecting the State's argument that the record refuted the defendant's underlying claims because in failing to comply with Rule 604(d), postplea counsel failed to put evidence into the record that might have supported the claims and remanding for compliance without expressing an opinion as to the merits of the defendant's claims). Thus, we interpret *Brown* as simply holding that remand is not necessary where technical defects in a motion do not preclude the court from

16

considering the merits of a defendant's claims on a postplea motion. As we have already explained, that is not what happened here. We therefore conclude that it is necessary to remand this matter to the trial court for new postplea motions, if the defendant wishes to file them, and a new hearing in compliance with Rule 604(d).

¶ 48                                    III. CONCLUSION

¶ 49    For the foregoing reasons, we vacate the court's order denying the defendant's postplea motions. We remand for an opportunity to file new motions in compliance with Rule 604(d).


¶ 50    Order vacated; cause remanded.